**Elijah L. NUNN, Jr., Appellant–Respondent,**

v.

**Kristina R. NUNN, Appellee–Petitioner.**

**No. 49A05–0301–CV–10.**

Court of Appeals of Indiana.

July 15, 2003.

Irma Hampton (Nave) Stewart, Anderson, IN, Attorney for Appellant.

Stephen C. McNutt, Rynearson & Associates, Indianapolis, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Elijah Nunn appeals the trial court's order denying him custody of and visitation with his stepdaughter and granting sole custody of his son to his ex-wife, Kristina Nunn. We affirm in part and reverse and remand in part.

### Issues

Elijah raises three issues, which we restate as:

I. whether the trial court properly determined that it did not have jurisdiction to decide if he was entitled to custody of his stepdaughter;

II. whether the trial court properly denied his request for visitation with his stepdaughter; and

III. whether the trial court properly granted Kristina sole custody of their son.

### Facts

Before Kristina and Elijah were married but while they were dating, Kristina became pregnant with her second child[1] and informed Elijah that he might not be the baby's father. Elijah and Kristina continued to date, and on September 3, 1996, Kristina gave birth to B.A. On August 1, 1997, Elijah and Kristina were married. On July 10, 1998, Kristina gave birth to the parties' son, E.N.

On August 31, 2001, Kristina filed a petition for dissolution. On December 14, 2001, Elijah filed a petition to establish the paternity of B.A., a DNA test revealed that Elijah was not B.A.'s biological father. On November 14, 2002, the trial court held a hearing on Kristina's petition for dissolution. The trial court found that it did not have jurisdiction to consider awarding custody of B.A. to Elijah because she was not a child of the marriage. The trial court also concluded that awarding Elijah visitation with B.A. was not in her best interests. The trial court awarded sole custody of E.N. to Kristina with visitation rights to Elijah. Elijah now appeals.

### Analysis

"Child custody determinations fall squarely within the discretion of the trial court and will not be disturbed except for an abuse of discretion." *Klotz v. Klotz*, 747 N.E.2d 1187, 1189 (Ind.Ct.App.2001). We will not reverse unless the trial court's decision is against the logic and effect of the facts and circumstances before it or the reasonable inferences drawn therefrom. *Id.*

Here, the trial court, sua sponte, entered findings of fact and conclusions thereon on some issues. "When the trial court enters such findings sua sponte, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found." *Brinkmann v. Brinkmann*, 772 N.E.2d 441, 444 (Ind.Ct.App.2002). "We may affirm a general judgment on any theory supported by the evidence adduced at trial." *Id.*

We review sua sponte findings conclusions under the same standard as the review of findings and conclusions issued upon a party's written request. *Klotz*, 747 N.E.2d at 1190. We may affirm a judgment based on any legal theory supported by the findings. *Id.* In reviewing a judgment, we determine whether the evi-

---

1. D.A., Kristina's son from a previous relationship, was born on July 14, 1993, well before Elijah and Kristina began dating.

dence supports the findings and whether the findings support the judgment. *Id.*

▇▇▇▇ A judgment will be reversed only if it is clearly erroneous. *Id.* "Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them." *Id.* We consider only the evidence favorable to the judgment and all reasonable inferences drawn therefrom. *Id.* We will not reweigh the evidence or assess witness credibility. *Id.*

### I. Custody of B.A.

▇▇▇▇ With regard to the custody of B.A., the trial court found:

> 4. Respondent filed a Verified Petition for Paternity regarding the minor child, [B.A.], born 9/3/96. The DNA results exclude Respondent as the father of [B.A.]. The Court accepts these results and further finds that [B.A.] is not a child of the marriage and therefore the Court does not have jurisdiction to make custodial or child support orders as to [B.A.]. *Caban vs. Healey,* 634 N.E.2d 540 (Ind.App. 1994).

Appellant's App. p. 9. Elijah argues that the trial court erred when it concluded it did not have jurisdiction to determine whether he was entitled to custody of B.A. Elijah contends that the trial court's reliance on *Caban v. Healey,* 634 N.E.2d 540 (Ind.Ct.App.1994), *trans. denied,* was misplaced because the relevant statute it addressed had been repealed and replaced. Because Elijah had the burden of proof as to this issue at the hearing, he is appealing a negative judgment. *Kennedy v. Kenne-*

*dy,* 688 N.E.2d 1264, 1267 (Ind.Ct.App. 1997), *trans. denied.* We will reverse a negative judgment only if it is contrary to law. *Id.* Elijah must show that the evidence points unerringly to a conclusion different from that reached by the trier of fact. *See id.*

In *Caban,* a stepmother petitioned for temporary custody of her stepdaughter. 634 N.E.2d at 542. In that case, we observed that the trial court did not have jurisdiction to award custody to stepmother because the stepdaughter was not a child born to both parties of the marriage. *Id.* at 543.

In 1999, however, the legislature amended the statutes governing certain custody proceedings to allow "de facto" custodians to be parties in such proceedings. *In re L.L. & J.L.,* 745 N.E.2d 222, 229 (Ind.Ct. App.2001), *trans. denied.* We have previously concluded that these amendments were intended "to clarify that a third party may have standing in certain custody proceedings, and that it may be in a child's best interests to be placed in that party's custody." *Id.* at 230.

Indiana Code Section 31-9-2-35.5 defines de facto custodian in part as "a person who has been the primary caregiver for, and financial support of, a child who has resided with that person for at least: (1) six (6) months if the child is less that three (3) years of age; or (2) one (1) year if the child is at least three (3) years of age." Indiana Code section 31-14-13-2.5 [2] contains factors for trial courts to consider in determining whether to award custody to de facto custodian and provides:

---

**2.** We note that Indiana Code Section 31-14-13-2.5 applies to de facto custodians in the context of establishing paternity and is identical to Indiana Code Section 31-17-2-8.5, which applies to general custody determinations. *See Dunson v. Dunson,* 769 N.E.2d

1120, 1126 n. 5 (Ind.2002). Although both sections appear to be applicable to this case, we apply Indiana Code Section 31-14-13-2.5 because Elijah petitioned to establish the paternity of B.A.

(a). This section applies only if the court finds by clear and convincing evidence that the child has been cared for by a de facto custodian.

(b) In addition to the factors listed in section 2 [3] of this chapter, the court shall consider the following factors in determining custody:

(1) The wishes of the child's de facto custodian.

(2) The extent to which the child has been cared for, nurtured, and supported by the de facto custodian.

(3) The intent of the child's parent in placing the child with the de facto custodian.

(4) The circumstances under which the child was allowed to remain in the custody of the de facto custodian, including whether the child was placed with the de facto custodian to allow the parent now seeking custody to:

(A) seek employment;

(B) work; or

(C) attend school.

(c) If a court determines that a child is in the custody of a de facto custodian, the court shall make the de facto custodian a party to the proceeding.

(d) The court shall award custody of the child to the child's de facto custodian if the court determines that it is in the best interests of the child.

(e) If the court awards custody of the child to the child's de facto custodian, the de facto custodian is considered to have legal custody of the child under Indiana law.

Clearly, these amendments to the child custody statutes are. intended to vest a trial court with jurisdiction to determine whether a third-party is a de facto custodian entitled to consideration in a custody dispute. Thus, the trial court did have jurisdiction to determine custody orders concerning B.A. even though she was not a child of the marriage.

 Our decision in *L.L.*, 745 N.E.2d at 230–31, provides a framework for trial courts to apply when considering a custody dispute between a natural parent and a third-party.

First, there is a presumption in all cases that the natural parent should have custody of his or her child. The third party bears the burden of overcoming this presumption by clear and cogent evidence. Evidence sufficient to rebut the presumption may, but need not necessarily, consist of the parent's present unfitness, or past abandonment of the child such that the affections of the child and third party have become so interwoven that to sever them would serious-

---

**3.** Indiana Code Section 31–14–13–2 provides: The court shall determine custody in accordance with the best interests of the child. In determining the child's best interests, there is not a presumption favoring either parent. The court shall consider all relevant factors, including the following:
(1) The age and sex of the child.
(2) The wishes of the child's parents.
(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
(4) The interaction and interrelationship of the child with:
 (A) the child's parents;
 (B) the child's siblings; and
 (C) any other person who may significantly affect the child's best interest.
(5) The child's adjustment to home, school, and community.
(6) The mental and physical health of all individuals involved.
(7) Evidence of a pattern of domestic or family violence by either parent.
(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter.

ly mar and endanger the future happiness of the child. However, a general finding that it would be in the child's "best interest" to be placed in the third party's custody is not sufficient to rebut the presumption. If the presumption is rebutted, then the court engages in a general "best interests" analysis. The court may, but is not required to, be guided by the "best interests" factors listed in Indiana Code Sections 31-14-13-2, 31-14-13-2.5, 31-17-2-8, and 31-17-2-8.5, if the proceeding is not one explicitly governed by those sections.

If a decision to leave or place custody of a child in a third party, rather than a parent, is to be based solely upon the child's "best interests," as opposed to a finding of parental unfitness, abandonment, or other wrongdoing, such interests should be specifically delineated, as well as be compelling and in the *"real and permanent"* interests of the child.

*Id.* (citation omitted and emphasis in the original).

 Elijah presented evidence tending to rebut the presumption in favor of Kristina as B.A.'s natural parent. For example, he presented evidence that he did not know B.A. was not his biological child until the dissolution proceeding had begun, that he had been a father figure to B.A. her entire life, and that they had developed a deep father-daughter bond. Elijah also presented evidence from which it could be concluded that awarding custody to him was in B.A.'s best interest. Such evidence included testimony that he was instrumental in B.A.'s daily care and financial support. Whether this evidence is sufficient to establish that he should be awarded custody of B.A., however, is for the trial court to determine. Accordingly, we remand this issue to the trial for consideration under the framework announced in *L.L.,* 745 N.E.2d at 230–31, and the deter-mination of whether Elijah should be granted custody of B.A. as a de facto custodian.

## II. Visitation with B.A.

 Elijah also argues that the trial court erred in denying his request for visitation with B.A. We address this argument because it could become an issue on remand if the trial court grants Kristina custody of B.A. In determining whether to grant visitation to a non-parent third-party, the third-party must demonstrate the existence of a custodial and parental relationship and that visitation would be in the child's best interests. *In re J.A.C.,* 734 N.E.2d 1057, 1060 (Ind.Ct.App.2000). Because Elijah had the burden of proof at the hearing and was denied visitation with B.A., he is appealing a negative judgment. *See Kennedy,* 688 N.E.2d at 1267. Accordingly, Elijah must establish that the trial court's judgment is contrary to law or that the evidence points unerringly to a conclusion different from that reached by the trial court. *See id.*

With regard to the visitation of B.A., the trial court entered the following finding and conclusion:

8. In regard to visitation with [B.A.], the evidence demonstrates that Respondent has a custodial and parental relationship with said child. *Caban, supra.* Respondent bears the burden of establishing that visitation with the minor child would be in the child's best interest. *Francis v. Francis,* 654 N.E.2d 4 (Ind.App.1995). The evidence established that the Respondent had a similar parent-child relationship with [D.A.] during the marriage of the Parties. After Petitioner filed for divorce, Respondent terminated all contact with [D.A.] and made no attempt to communicate to him whatsoever. The Domestic Relations Counseling Report of March 21,

2002, admitted into evidence states that [D.A.] believed that it was his fault that Mr. Nunn left the family and considered Mr. Nunn as a father figure. Respondent testified that he read the report but has never made any attempt to contact [D.A.] since the DRCB Report was issued. Respondent failed to provide the Court with any reasonable explanation for why he terminated his relationship with [D.A.] or why he did not contact [D.A.] subsequent to his review of the Domestic Relations Counseling Bureau Report in order to correct the child's belief that the child was responsible for the Dissolution of Marriage. Respondent has further completely refused to communicate with Petitioner for over a year. Respondent simply expects his mother or sister to talk to Petitioner even when he is in the same location as Petitioner. Given the fact that Respondent has not spoken to the Petitioner since the divorce was filed in August of 2001, and Respondent has failed to carry his burden of proof that visitation with [B.A.] would be in her best interest. Therefore, Respondent's request for visitation of [B.A.] is denied.

Appellant's App. pp. 10–11.

There is ample evidence to support the trial court's finding that Elijah had a custodial and parental relationship with B.A. For example, Kristina testified that neither she nor Elijah was the primary care giver because they were both very involved in raising the children. Kristina also testified that when Elijah worked the night shift he primarily cared for the children during the day while she was at work by fixing their meals, doing the laundry, changing their diapers, and giving them baths. She testified that for the most part, Elijah was a good father.

Regarding the best interests' analysis the trial court relied entirely on Elijah's relationship with D.A. and his failure to communicate with Kristina to conclude that visitation was not in B.A.'s best interests. These findings, however, do not support the judgment denying Elijah visitation with B.A.

The trial court concluded that Elijah chose not to continue his relationship with D.A. without explanation, but it failed to acknowledge that he had made this decision after unsubstantiated allegations of abuse were made by D.A. against Elijah. The trial court also concluded that Elijah had failed to communicate with Kristina while the dissolution proceeding was pending, but it failed to acknowledge that she had a no contact order against Elijah during part of the separation. The trial court did not adequately explain why visitation with Elijah was not in B.A.'s best interest. The trial court did not establish how Elijah's relationship with D.A. and Kristina affected his relationship with B.A. or why Elijah did not meet his burden of proof regarding B.A.'s best interests.

Further, we note that although Elijah found out in early March 2002, that B.A. was not his biological daughter, he paid regular child support and observed the scheduled visitations with her until the hearing, which was held in November 2002. Although Kristina feared that Elijah would terminate contact with B.A. as he had done with D.A., in *Francis v. Francis*, 654 N.E.2d 4, 7 (Ind.Ct.App.1995), *trans. denied*, we held, "A parent's mere protest that visitation with the third party would somehow harm the family is not enough to deny visitation in all cases, particularly where the third party cared for the children as his own." At the hearing, Kristina merely protested that because Elijah had terminated his relationship with D.A. he might do the same with B.A. However, Kristina's protests did not relate directly to Elijah's relationship with B.A.,

who Elijah had always thought of and cared for as his own daughter.

On remand, the trial court must provide findings that explain why continued visitation with Elijah is not in B.A.'s best interests in light of the fact that Elijah has always had a father-daughter relationship with B.A. and demonstrated his desire to maintain that relationship by continuing visitation and support during the pendency of the dissolution proceeding.

### III. Custody of E.N.

 Elijah also argues that the trial court abused its discretion in awarding Kristina sole custody of E.N. The trial court's general judgment on this issue provided:

> 5. The Court finds that it is in the best interest of the minor child, [E.N.], that sole custody of said minor child be awarded to the Petitioner. Respondent is awarded reasonable visitation as agreed upon by the Parties, but not less than that provided under the Indiana Parenting Time Guidelines. . . .

Appellant's App. p. 10. Because this is a general judgment, we may affirm on any theory supported by the evidence adduced at the hearing. *Brinkmann,* 772 N.E.2d 441 at 444.

 In making his argument, Elijah asks us to reweigh evidence he has already presented to the trial court. In custody disputes, trial courts are often called upon to make "Solomon-like" decisions in complex and sensitive matters. *Trost–Steffen v. Steffen,* 772 N.E.2d 500, 509 (Ind.Ct. App.2002) (citation omitted), *trans. denied.* As we have repeatedly observed in child custody cases, trial courts are in the position to see the parties, observe their conduct and demeanor, and hear their testi-mony; therefore, their decisions receive considerable deference on appeal. *Id.*

The evidence here indicates that both parties were involved in the child rearing and have developed strong bonds with E.N. The evidence also indicates that parties have had a difficult time communicating with each other since the petition for dissolution was filed[4] making joint custody an unappealing option at this point. *See* I.C. § 31–17–2–15(2) (requiring trial courts to consider whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare): *see also In re V.A.M.C.,* 768 N.E.2d 990, 1000 (Ind.Ct.App.2002) (recognizing that joint custody would not have been a viable option where the mother and father had had a difficult relationship).

The trial court found that it was in E.N.'s best interests that Kristina be awarded sole custody. It is the trial court's responsibility to determine custody in accordance with the child's best interests. I.C. 31–17–2–8. Because we will not reweigh the evidence or assess witness credibility, we cannot conclude that the trial court erred in awarding sole custody of E.N. to Kristina with visitation rights to Elijah.

### Conclusion

The trial court erred in concluding that it did not have jurisdiction to consider whether Elijah should be awarded custody of B.A. The findings are insufficient to support the conclusion that continued visitation with Elijah is not in B.A.'s best interests. The trial court did not abuse its discretion in awarding custody of E.N. to Kristina with visitation rights to Elijah.

---

4. This is evidenced by the fact that a no contact order was in place during part of the parties' separation.

Thus, we affirm in part and reverse and remand in part.

Affirmed in part and reversed and remanded in part.

RILEY, J., and SHARPNACK, J., concur.