# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**KRISTEN L. SCHEUERMAN**
Valparaiso, Indiana

ATTORNEY FOR APPELLEE:

**DAVID E. BAUM**
David E. Baum Law Office, P.C.
Chesterton, Indiana

FILED

Apr 17 2014, 10:00 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TERESA FRY n/k/a TERESA DOLAN, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 64A03-1307-DR-262 |
| | ) | |
| MICHAEL FRY, | ) | |
| | ) | |
| Appellee-Petitioner, | ) | |

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable John Shanahan, Special Judge
Cause No. 64D02-0308-DR-6728

**April 17, 2014**

**OPINION - FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issue

When Michael and Teresa Fry divorced in 2005, they agreed regarding child custody, parenting time, and support for their child, J.F. In addition, they agreed that Michael could exercise parenting time with respect to Teresa's prior-born daughter, K.D., at his option. In 2012, Michael filed an emergency petition for modification of custody with respect to both children, alleging that Teresa suffers from a degenerative illness that renders her unable to adequately care for them. The trial court granted the petition, ordering that Michael have primary physical custody of both children and Teresa have supervised visitation. Teresa later filed a Trial Rule 60(B) motion for relief from judgment, seeking to void the order modifying custody as to K.D. The trial court denied the motion for relief and reaffirmed its previous orders. Teresa appeals the trial court's denial of her motion for relief as to K.D. only, raising the sole issue of whether the trial court had jurisdiction in this post-dissolution matter to determine custody of K.D., who was not a child of the marriage. Concluding the trial court had jurisdiction and committed no legal error, we affirm.

## Facts and Procedural History

When Michael and Teresa were married in 2001, K.D. was approximately three years old. J.F. was born of the marriage in late 2001. The parties separated in 2004, and on May 10, 2005, the trial court approved an agreed child custody and property settlement agreement. The parties acknowledged therein that one child, J.F., was born of the marriage and agreed that they would have joint legal custody of him, with Teresa awarded primary physical custody and Michael to have "reasonable, liberal and flexible" parenting time "which the

2

parties can agree between themselves." Appellant's Appendix at 13. In addition, they agreed "that all of the foregoing parenting rights may include Teresa's daughter, [K.D.], at Michael's option." Id. at 13-14. For health insurance coverage reasons, the parties' marriage was not dissolved until October 7, 2005, by summary dissolution decree incorporating the child custody and property settlement agreement.

In the ensuing years, Michael included K.D. when he exercised parenting time with J.F. whenever possible. No mention is made in the record of the identity or whereabouts of K.D.'s biological father. On June 21, 2012, Michael filed an Emergency Petition for Modification of Custody, Parenting Time and Child Support, alleging:

> 3. . . . [P]ursuant to . . . the Child Custody and Property Settlement Agreement executed by the Parties . . ., [Michael] was granted the same parenting time rights with [Teresa's] daughter, [K.D.], age fourteen (14), that [Michael] enjoys with [J.F.]
> 4. . . . [Michael] included [K.D.] during parenting time with [J.F.] on each and every occasion that [Teresa] would allow same.
> 5. [Michael] is the only Father that [K.D.] has ever known, and she has always called him "Dad" and has manifested an intent to spend as much time with [Michael] as [Teresa] will allow.
> 6. Since the entry of the Decree herein, there has been a substantial and continuing change in circumstances that constitutes an emergency, to wit:
>> a. [Teresa] suffers from Huntington's Disease, which has progressively diminished her ability to physically and [sic] care for the minor children as well as to mentally and emotionally nurture them.
>> b. [Teresa] has interfered and refused [Michael's] scheduled parenting time on an ongoing basis without any rational basis for doing so.
>> * * *
>> i. Conversely, [Teresa] has called [Michael] a plethora of times to pick up the minor children when [Teresa] is unable to manage the day-to-day requirements of managing two (2) active children.
>> j. [Teresa] is no longer able to drive and does not have a car, so [Michael] is required to provide all transportation for the minor children.

3

k. [Teresa] is constantly yelling at the minor children and is not able to maintain an even keel.

l. [Teresa] has moved five (5) times in four (4) years, and [Michael] has a good faith belief that [Teresa] has no recourse but to move again.

m. [Teresa] has been violent at the children's schools.

n. [K.D.] has been suspended from school because she was acting out, which is related to the stress of living with [Teresa].

* * *

8. [Michael] is willing to adopt [K.D.], if [Teresa] would agree.

9. [Michael] has a good faith belief that the best interests of the children are compromised by [Teresa's] continued physical custody in the face of [Teresa's] progressive disease and escalating irrationality, and [Michael] does not believe that the minor children are safe in [Teresa's] care.

WHEREFORE, [Michael] prays that this honorable Court will conduct an Emergency Hearing, grant [Michael] temporary custody of the minor children, appoint a Guardian ad Litem to make recommendations to the Court with respect to permanent custody, modify child support and parenting time to reflect the totality of the circumstances, ultimately award [Michael] permanent custody of both minor children and for all other just and proper relief.

Id. at 35-38.

On July 25, 2012, the trial court held a hearing during which Michael and Teresa both testified, and the court conducted an in camera interview with K.D. Michael introduced into evidence a letter from Kathleen M. Shannon, M.D., at Rush University Medical Center which stated:

Teresa [ ] is followed here for the diagnosis of Huntington's disease, a degenerative nervous system disorder characterized by cognitive impairment, behavioral and psychiatric disorders and derangements in motor control. This condition is progressive and untreatable, and no appreciable improvement can be expected.

As a result of this condition, [Teresa] has abnormal cognitive function and poor judgment and is unable to parent her 2 minor children safely and effectively.

July 25, 2012 Hearing Exhibits, Petitioner's Exhibit 1.

4

The following day, the trial court issued an order on Michael's petition:

2. The Court finds that an emergency exists based upon the present incapacity of [Teresa] to provide care and supervision for the children . . . . The Court's determination of [Teresa's] incapacity is based upon the medical opinion of her physician . . . .

3. In addition, the Court finds that Dr. Shannon's report is supported by the testimony of [Michael], and during the Court's in camera interview with [K.D.], and by [Teresa's] testimony as well as her behavior in court.

4. The Court finds that [Teresa] relies upon [K.D.] to fulfill many parental functions, and that this contrary [sic] to [K.D.'s] best interests, as she is saddened and frustrated by the loss of her childhood. The Court further finds that [Teresa] has struck and shoved [K.D.], and has consistently and pervasively denied the children parenting time with [Michael].

5. The Court notes that [Michael] is not the biological or legal father of [K.D.] Nevertheless, [Michael] has acted in the capacity of the child's father with [Teresa's] encouragement and consent for many years, and the Dissolution Decree grants [Michael] parenting time rights to [K.D.]

6. The Court finds the above facts to constitute a substantial change in one (1) or more of the factors that the court may consider under I.C. 31-17-2-8.5, and finds that modification of custody is in the best interests of both children.

7. [Michael] shall have primary physical custody of both children immediately, subject to parenting time with [Teresa], which at this time shall be supervised by [Teresa's] sister . . . or such other relatives as [agreed], or, if [the sister] is unable or unwilling to provide said supervision, parenting time shall only be at Family House or some other comparable facility close to [Teresa's] home, at [Michael's] expense.

Appellant's App. at 39-40.

Approximately one month later, Teresa filed three motions with the trial court, all related to paragraph 7 of the trial court's order: a Verified Petition for Rule to Show Cause, a Verified Motion to Enforce Order of July 26, 2012, and a Verified Motion for Contempt. These motions collectively alleged that Teresa's sister lives in Florida and is unable to supervise visitation, that Teresa has no other relatives in Indiana, and that to date, Michael had refused to arrange parenting time at an acceptable facility as ordered and was not

5

facilitating telephonic access between Teresa and the children. The motions requested that the trial court enforce its July 26, 2012, order and require Michael to arrange supervised parenting time, permit Teresa reasonable telephonic access to the children, and find Michael in contempt and order him to pay her attorney fees. In January 2013, the trial court issued an Order on Parenting Time addressing these motions. Noting it had previously determined that Teresa's parenting time should be supervised "to protect the emotional health of the children," the court stated the issues raised by the motions as clarifying where such supervised parenting time should occur and determining whether Michael should be held in contempt of the order. Id. at 49.

> The Court now clarifies that supervision of [Teresa's] parenting time continues to be in the best interests of the children. Ordinarily . . . [i]t should not be the children's burden to bear to travel somewhere distant from their home in order to visit with their parent.

> Unfortunately, due to [Teresa's] medical condition, finances, and other circumstances, application of the above principles would have the tragic consequence of virtually terminating her parental rights to her children in this case. This result is exemplified by the fact that [Teresa] has not seen the children since July 20, 2012. . . .

> Custody of the children shall continue to be with [Michael].

> The Court finds that [Michael] is not in contempt of the Court's previous orders regarding parenting time. Even though the Court finds that [Michael] refused to engage in communications with [Teresa] regarding the parenting time issues, the Court finds that his refusal was not a deliberate and willful attempt to disregard the court's orders, but rather, occasioned by the extreme level of difficulty he has had in engaging in rational communication with [Teresa]. As a consequence, [Teresa's] motion for award of attorney fees is hereby DENIED.

> The Court's Order regarding parenting time is hereby clarified to provide that there be supervised parenting time between [Teresa] and the children one time

per month for up to three (3) hours, at Supervised Visitation Services of Chicago, (SVSC), with the costs thereof to be paid as follows: Intake fee to be paid by [Michael]; and hourly fees to be paid by [Teresa].

Id. at 49-50.

On April 26, 2013, Teresa filed a Petition for Modification of custody alleging that she exercised parenting time in January 2013 and Michael had not thereafter complied with the parenting time order; that the emergency alleged by Michael had passed and/or stabilized and custody of the children should be returned to Teresa; and that if Michael desired a permanent change of custody, he should be required to follow the statutory procedure for such modification. Teresa also filed a Motion Pursuant to Trial Rule 60 seeking to declare the trial court's order of July 26, 2012, and all subsequent orders relating to K.D. void because "[K.D.] is not a child of this marriage, and not a child of [Michael's] . . . [and] this Court has no jurisdiction to award custody of [K.D.] to [Michael]." Id. at 55. The trial court held a hearing and then issued an order denying Teresa's motions:

> The Court now denies the Trial Rule 60 Motion of [Teresa] and re-affirms the Court's previous orders.
>
> The Court finds that the evidence is overwhelming that it is in the best interests of the children that their contact with [Teresa] continue to occur only to the extent such contact may be supervised. . . .
>
> The Court now denies [Teresa's] Petition for Modification. There continues to be an emergency, based upon [Teresa's] medical/psychological condition, that requires that the children remain in the care and custody of [Michael] and further requires that [Teresa's] parenting time be supervised.

Id. at 56-57. Teresa now appeals the trial court's denial of her Motion for Relief from Judgment.

7

## Discussion and Decision

### I. Standard of Review

Teresa argues that the trial court's orders regarding custody of K.D. were void for want of jurisdiction, entitling her to relief under Indiana Trial Rule 60(B)(6). "[A] void judgment is a nullity, and typically occurs where the court lacks subject matter or personal jurisdiction." Seleme v. JP Morgan Chase Bank, 982 N.E.2d 299, 304 (Ind. Ct. App. 2012) (quoting 22B Stephen E. Arthur, Indiana Practice § 60.2 (2012) (footnote omitted)), trans. denied. Ordinarily, we employ an abuse of discretion standard when reviewing a trial court's ruling on a motion for relief from judgment. D.L.D. v. L.D., 911 N.E.2d 675, 678 (Ind. Ct. App. 2009), trans. denied. "However, when a motion for relief from judgment is made pursuant to Trial Rule 60(B)(6), alleging that the judgment is void, discretion on the part of the trial court is not employed because either the judgment is void or it is valid." Id.

### II. Custody Order

As our supreme court has explained, "[l]ike the rest of the nation's courts, Indiana trial courts possess two kinds of 'jurisdiction.' Subject matter jurisdiction is the power to hear and determine cases of the general class to which any particular proceeding belongs. Personal jurisdiction requires that appropriate process be effected over the parties." K.S. v. State, 849 N.E.2d 538, 540 (Ind. 2006). If a claim falls within the general scope of authority conferred on a court by the Indiana Constitution or statute, the court has subject matter jurisdiction over that claim. Kondamuri v. Kondamuri, 799 N.E.2d 1153, 1156 (Ind. Ct. App. 2003), trans. denied. When a court lacks subject matter jurisdiction, however, its

8

actions are void ab initio and a judgment entered by that court may be attacked at any time. Id. Courts of general jurisdiction are presumed to have subject matter jurisdiction, Mishler v. Cnty. of Elkhart, 544 N.E.2d 149, 151 (Ind. 1989), and in fact, Teresa concedes the trial court had the power to hear and determine dissolution cases and issues incidental thereto, including child custody, see Appellant's Brief at 5; see also L.M.A. v. M.L.A., 755 N.E.2d 1172, 1175 (Ind. Ct. App. 2001) ("Title 31 of the Indiana Code grants trial courts the incidental . . . specific authority to decide child custody matters within the general grant of subject matter jurisdiction to hear actions for dissolution and child support.") (quotations omitted). The trial court not only has subject matter jurisdiction over a child custody determination for a child of the marriage, but also over a child custody determination involving a third party outside the marriage. Moreover, Teresa raises no issue as to the trial court's personal jurisdiction over the parties. The trial court therefore possessed the two forms of jurisdiction required to render a valid judgment.

In support of her argument, however, Teresa references case law decided prior to K.S. in which three types of jurisdiction were described: subject matter jurisdiction, personal jurisdiction, and "jurisdiction over the particular case." Appellant's Brief at 4-5 (citing Carothers v. Rose, 743 N.E.2d 348, 351 (Ind. Ct. App. 2001)). She argues the trial court lacked "jurisdiction over this particular case"—or at least that segment of the case concerning the custody of K.D. because she is not a child of the marriage. However, K.S. disavowed that as a true jurisdictional issue: "phrases . . . like 'jurisdiction over a particular case,' confuse actual jurisdiction with legal error . . . ." 849 N.E.2d at 540. "The fact that a

9

trial court may have erred along the course of adjudicating a dispute does not mean it lacked jurisdiction." Id. at 541.

Teresa's claim, then, is not a true jurisdictional one, and the judgment of which she complains is not void for lack of jurisdiction. To the extent she argues she is otherwise entitled to relief from the judgment because Michael had no legal right to pursue custody of K.D. and the trial court was therefore not permitted to hear the issue, we disagree for several reasons. First, although neither the parties nor the trial court specifically referenced this statute in the proceedings below, Indiana Code section 31-17-2-25 allows for emergency placement of a child with a person other than a parent:

> (a) This section applies if a custodial parent or guardian of a child dies or becomes unable to care for the child.
> (b) . . . [I]f a person other than a parent files a petition:
>     (1) seeking to determine custody of the child; or
>     (2) to modify custody of the child;
> that person may request an initial hearing by alleging, as part of the petition, or in a separate petition, the facts and circumstances warranting emergency placement with a person other than the noncustodial parent, pending a final determination of custody.

Michael's original petition alleged Teresa was unable to care for K.D. because of her illness, set forth the specific facts and circumstances constituting the emergency, requested a hearing, and prayed for immediate custody pending a final determination that he be awarded permanent custody of K.D. Michael had a legal right pursuant to this statute to seek such relief.

Second, as Teresa points out, "child" for purposes of the dissolution statutes is defined as "a child or children of both parties to the marriage." Ind. Code § 31-9-2-13(a).

10

However, a trial court adjudicating a dissolution may award custody of a child to a natural or adoptive parent of the child or to a de facto custodian. In re Custody of G.J., 796 N.E.2d 756, 762 (Ind. Ct. App. 2003), trans. denied. A de facto custodian is defined in part as "a person who has been the primary caregiver for, and financial support of, a child who has resided with the person for at least . . . one (1) year if the child is at least three (3) years of age . . . ." Ind. Code § 31-9-2-35.5. Pursuant to this statute, our court has held that a trial court could determine in a dissolution action whether the husband was entitled to custody of a child not born of the marriage. Nunn v. Nunn, 791 N.E.2d 779, 784 (Ind. Ct. App. 2003). Here, Michael and Teresa were married when K.D. was three years old. At the time of the dissolution, she was seven, and he could have been considered a de facto custodian at that time. Although Michael was not obligated by the terms of the dissolution decree to support K.D. financially, he was given the right to exercise parenting time with her and he did in fact continue his parental relationship with her after the divorce until he filed his petition for emergency custody of both children when she was fourteen. We are not privy to the substance of the in camera discussion between the trial court and K.D., but it is apparent from the trial court's order that it found K.D. and Michael have a strong relationship. In short, Michael would be entitled to consideration in custody matters as a de facto custodian to K.D.[1]

---

[1] Indiana Code section 31-17-2-3(2) would have allowed Michael to file a petition for custody independent of the dissolution action, as well. That statute provides that any person "other than a parent" may seek custody of a child by initiating an independent cause of action for custody that is not ancillary to a dissolution, legal separation, or child support action, subject to the law governing third party-natural parent custody disputes. In re G.J., 796 N.E.2d at 762, 764.

Third, we note that instead of appealing the trial court's July 26, 2012 order giving Michael custody of K.D. as erroneous, Teresa affirmatively sought relief from the trial court on the basis of this order, filing several motions asking the trial court to enforce the terms of the order as to her parenting time with both children and to hold Michael in contempt for violating it. For nearly a year, she acquiesced in the custody order, seeking only to exercise the parenting time the trial court ordered. And finally, we note that this might be a different matter if K.D.'s biological father had filed the motion for relief from judgment alleging a due process violation in the proceedings which granted custody to a third party with no notice to or an opportunity for him to be heard. However, K.D.'s biological father was never mentioned by the parties, nor was the custody arrangement, if any, between him and Teresa with regard to K.D., and there is no indication of how or if this proceeding impacts him. This is not a situation where the trial court was determining custody between a custodial parent unable to care for the child, a non-custodial parent, and a third party.

## Conclusion

The trial court did not commit any legal error in considering Michael's emergency petition, and Teresa does not dispute an emergency existed as found by the trial court in its July 26, 2012, order. The trial court's order awarding custody of K.D. to Michael is therefore affirmed.

Affirmed.

BARNES, J., and BROWN, J., concur