## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 17 2016, 7:40 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Jonathan T. Feavel
Andrew K. Porter
Feavel & Porter, LLP
Vincennes, Indiana

ATTORNEY FOR APPELLEE

David R. Sutter
Jenner, Pattison, Sutter & Wynn, LLP
Madison, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re the Paternity of R.J.D., | March 17, 2016 |
| | Court of Appeals Case No. 39A01-1507-JP-1012 |
| D.D. (Father) *Appellant-Petitioner,* | Appeal from the Jefferson Circuit Court |
| v. | The Honorable Darrell M. Auxier, Judge |
| A.J. (Mother), *Appellee-Respondent.* | Trial Court Cause No. 39C01-1110-JP-39 |

**Mathias, Judge.**

[1] The Jefferson Circuit Court entered an order denying a petition to modify custody filed by D.D. ("Father") in which Father sought to obtain primary

physical custody of his minor daughter R.J.D. Father appeals and presents three issues for our review, which we consolidate and restate as whether the trial court clearly erred in denying Father's petition to modify custody.

We affirm.

## Facts and Procedural History

Mother and Father were in a romantic relationship and had one child together, R.J.D., who was born in August 2009. Father established his paternity of R.J.D. At the time paternity was established, both Mother and Father lived in Jefferson County, Indiana. By agreement of the parties, Mother had primary physical custody of R.J.D., and father had liberal visitation rights; the parties had joint legal custody of R.J.D. Shortly after he established his paternity of R.J.D., Father moved to Knox County, approximately two hours away from Mother's home in Jefferson County. Still, Father remained an active part of R.J.D.'s life and attended her school functions and extracurricular activities.

Mother also has three other daughters: L., A.J., and M.E.[1] At the time of the custody modification hearing in July 2015, these children were aged fourteen, ten, and two months, respectively. In March 2013, Mother married M.E.'s father, who introduced Mother to methamphetamine use. Father subsequently became suspicious that Mother was abusing methamphetamine, and in May

---

[1] Mother also had a son, D., who was tragically killed on March 2, 2012, when a tornado struck the home of Mother's grandparents. Mother's grandparents were also killed when the tornado struck, and Mother was seriously injured.

2014, the Department of Child Services ("DCS") filed a petition alleging that Mother's children were children in need of services ("CHINS").

As a result of the CHINS proceedings, R.J.D. was placed with Father. At the beginning of the CHINS case, Mother denied using methamphetamine, even though she tested positive for methamphetamine. Mother even used methamphetamine when she was pregnant with the youngest of her children, M.E., although the child did not test positive for any drugs at birth. Mother eventually admitted that she used methamphetamine and participated in intensive outpatient therapy. By the time of the custody modification hearing, Mother self-reported as "clean" for approximately six months.

Before R.J.D. was placed with Father, he changed jobs so that he could have a more flexible schedule. Previously, Father had been a boilermaker and had to travel frequently. At the time of the custody modification hearing, Father worked at a grain processing center and was able to spend more time at home with R.J.D. During the thirteen months that R.J.D. was in Father's custody, she bonded with both Father and his girlfriend. At Father's home, R.J.D. had her own bedroom, and the house was clean and well kept. She had adjusted well to her preschool and was looking forward to starting kindergarten. She had also made several neighborhood friends and participated in extracurricular activities.

Mother has been unemployed for several years and lived off of savings and money she received or inherited from her grandparents. Mother had unsuccessfully applied for disability in the past and was in the process of doing

so again at the time of the hearing. Mother's house was also clean, and R.J.D. enjoyed her visits with Mother and her sisters. She looked forward to such visits and was upset when she had to leave to return to Father's house.

[8] Although Father had custody of R.J.D. because of the CHINS case, he did not have primary physical custody of R.J.D. pursuant to the court's order in the paternity action. Therefore, Father filed a petition to modify custody on June 13, 2014, asking the court in the paternity action to award primary physical custody of R.J.D. to him. After several continuances and an agreement to abate Father's child support order while he had custody of R.J.D., the trial court finally held a hearing on the petition to modify custody on July 14, 2015. The trial court took judicial notice of the court record in the CHINS case and heard evidence and arguments from both parties. The family case manager for DCS testified and recommended that R.J.D. remain in Father's custody. The DCS case manager believed that Father had provided structure and stability for R.J.D. and that to remove her from Father's care would be disruptive. The DCS caseworker, however, also testified that she did not have any concerns about R.J.D. if she returned to Mother's care. The Guardian ad Litem ("GAL") testified that his only concern was if Father obtained custody that R.J.D. maintain her close relationship with her sisters in Mother's care. On July 20, 2015, the trial court entered an order stating in relevant part:

> The Court, having heard evidence, having taken judicial notice of the hearing in the companion CHINS case, and being duly advised in the premises, now finds that the changes of circumstance which would have supported a modification of

custody no longer exist and that Petitioner's Petition should be denied.

Appellant's App. p. 11. Father now appeals.

## Standard of Review

Modification of child custody may occur only when a parent can demonstrate both: (1) "modification is in the best interests of the child," and (2) "there is a substantial change in one or more of the factors the court may consider" in its initial custody determination. Ind. Code § 31-14-13-6. These factors include:

> (1) The age and sex of the child.
>
> (2) The wishes of the child's parents.
>
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
>
> (4) The interaction and interrelationship of the child with:
>
> > (A) the child's parents;
> > (B) the child's siblings; and
> > (C) any other person who may significantly affect the child's best interest.
>
> (5) The child's adjustment to home, school, and community.
>
> (6) The mental and physical health of all individuals involved.
>
> (7) Evidence of a pattern of domestic or family violence by either parent.
>
> (8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter.

Ind. Code § 31-14-13-2.

Because Father filed the motion to modify, he had the burden to demonstrate a change in circumstances. *See Heagy v. Kean*, 864 N.E.2d 383, 388 (Ind. Ct. App. 2007), *trans. denied*. Therefore, by appealing the denial of his motion to modify custody, Father is appealing from a negative judgment. *See Nunn v. Nunn*, 791 N.E.2d 779, 783 (Ind. Ct. App. 2003). We will reverse a negative judgment only if it is contrary to law, meaning that the evidence points unerringly to a conclusion different from that reached by the trial court. *Id*. It is not enough that the evidence might support some other conclusion; it must instead positively require the conclusion contended for by the appellant before there is a basis for reversal. *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002)). "[I]t is particularly difficult for a reviewing court to second-guess a situation that centers on the personalities of two parents battling for control of a child." *Id.* at 308.

Indiana appellate courts have a preference for granting latitude and deference to our trial courts in family law matters. *Wolljung v. Sidell*, 891 N.E.2d 1109, 1111 (Ind. Ct. App. 2008) (citing *Kirk*, 770 N.E.2d at 307). On appeal, we will not reweigh the evidence or judge the credibility of the witnesses. *Id.* Instead, we view only the evidence favorable to the trial court's judgment and the reasonable inference that may be drawn from this evidence. *Id*.

Where, as here, neither party requested special findings and the trial court did not enter special findings *sua sponte*, we review the trial court's decision under the general judgment standard. *Id*. Under this standard, the judgment will be affirmed if it can be sustained on any legal theory consistent with the evidence.

*Id.* at 1111-12. Judgments in custody matters generally turn on essential factual determinations and will be set aside only when they are clearly erroneous. *Id.* at 1112. We will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment. *Id.*

[13] With this highly-deferential standard of review in mind, we review Father's claim that the trial court erred in denying his petition to modify custody.

## Discussion and Decision

[14] We first address Father's argument that the trial court applied the wrong legal standard. Father claims that the trial court applied the standard from the statute governing the termination of parental rights when it wrote in its order, "the changes of circumstances which would have supported a modification of custody no longer exist[.]" Appellant's App. p. 11. Father takes this to be a reference to Indiana Code section 31-35-2-4(b)(2)(B)(i), which states that, to terminate parental rights, the trial court must find *inter alia* that "[t]here is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied."

[15] We do not view the trial court's order as referring to this statute. First, trial courts are presumed to know and follow the applicable law. *Ramsey v. Ramsey*, 863 N.E.2d 1232, 1239 (Ind. Ct. App. 2007). Moreover, the trial court's order did not reference section 31-35-2-4(b)(2)(B), nor did the court find that the conditions that led to R.J.D.'s removal from Mother's care would or would not

be remedied. It simply stated that the conditions which might have supported a modification of custody, i.e., Mother's abuse of methamphetamine, no longer existed. Accordingly, we cannot say that the trial court applied the wrong legal standard.

[16] Father also argues that the trial court erred by not finding that there had been a substantial change in one of the factors listed in Indiana Code section 31-14-13-2. As noted above, however, the trial court did not enter specific findings and conclusions. Thus, we are unable to determine whether the trial court denied Father's petition based on a finding that there was no substantial change in the factors or whether the trial court based its decision on a determination that modification was not in the best interests of the child. In other words, although there was evidence from which the trial court could have concluded that there was a substantial change in the circumstances, the court could still have denied the petition based on a finding that modification of custody was not in R.J.D.'s best interests. We therefore focus our discussion on the best interest analysis.

[17] Father claims that the trial court erred to the extent that it concluded that a modification of custody was not in the best interests of R.J.D. Viewing only the evidence favorable to the trial court's decision, we are unable to agree. To be sure, Father presented evidence that would have supported a conclusion that modification of custody would have been in R.J.D.'s best interests: DCS recommended that R.J.D. remain in Father's custody; Father provided R.J.D. with a stable, loving home; R.J.D. had become close with Father and his girlfriend; and R.J.D. was involved with school and extracurricular activities in

Father's town. From this evidence, a reasonable trier of fact could readily conclude that modification of custody to Father was in the child's best interests, and, were we in the position of the trial court, we may well have concluded that modification was in R.J.D.'s best interests. However, we are not in the position of the trial court, nor are we to reweigh the evidence and substitute our judgment for that of the trial court.

[18] As an appellate court, we must give deference to the trial court, especially in matters regarding child custody. Indeed, we "are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence.'" *Jarrell v. Jarrell*, 5 N.E.3d 1186, 1190 (Ind. Ct. App. 2014), *trans. denied* (quoting *Kirk*, 770 N.E.2d at 307).

[19] Here, the evidence favorable to the trial court's decision shows that Mother was doing well and had stopped using methamphetamine for several months. DCS had provided Mother with a safety plan for dealing with her ex-husband and the father of her youngest child M.E. Mother's home was appropriate for children, and DCS and the GAL had no concerns with R.J.D. returning to Mother's home at the conclusion of the CHINS case. R.J.D. was bonded with her sisters and enjoyed spending time with them. Mother was prepared to enroll R.J.D. in the same school system that her sisters attended.

Considering these facts and circumstances, the trial court could reasonably conclude that modifying custody so that R.J.D. would remain with Father was not in the best interests of the child. Father's arguments on appeal are little more than a request that we reweigh the evidence and come to a conclusion contrary to that reached by the trial court. This is not our prerogative on appeal.

## Conclusion

Viewing only the evidence favorable to the decision of the trial court, we cannot say that the trial court clearly erred in denying Father's petition to modify custody.

Affirmed.

Kirsch, J., and Brown, J., concur.