In re the Matter of, J.W., Appellant–
Respondent,

v.

HENDRICKS COUNTY OFFICE OF
FAMILY AND CHILDREN,
Appellee–Petitioner.

No. 32A01–9708–JV–253.

Court of Appeals of Indiana.

July 7, 1998.

Michael E. Caudill, Indianapolis, for Appellant–Respondent.

Charles E. Hostetter, Hostetter & O'Hara, Brownsburg, for Appellee–Petitioner.

## OPINION

BAILEY, Judge.

### Case Summary

Appellants–Respondents Robert and Pauline Williams ("the Williamses") appeal the juvenile court's judgment directing them to reimburse the Hendricks County Office of Family and Children ("OFC") for placement expenses incurred on behalf of their minor son, J.W. We affirm.

### Issues

The Williamses raise three issues on appeal which we consolidate and restate as follows:

I. Whether the juvenile court erred in ordering the Williamses to reimburse the OFC for $39,655.72, representing placement costs incurred on behalf of J.W.

II. Whether an implied contract existed between the Williamses and the OFC which obligated the OFC to place J.W. in a facility covered by the Williamses' insurance.

### Facts

The facts most favorable to the judgment indicate that J.W. is the Williamses' son. In September, 1995, the OFC filed a petition alleging that fourteen-year-old J.W. was a child in need of services (CHINS) due to the Williamses' inability to adequately supervise him. The juvenile court adjudicated J.W. as a CHINS and placed temporary wardship with the OFC. Among other things, the court also ordered the Williamses to submit financial statements and insurance information to the OFC, and to establish a child support account with the County Clerk. The Williamses opened the account, filed a financial declaration, and provided the OFC case manager with insurance information.

Although J.W. was initially permitted to remain in his parents' home, he was ultimately removed and placed with Adapts Plus, a private secure care facility. The juvenile court thereafter entered a dispositional decree ordering the Williamses to reimburse the OFC for placement costs at the rate of $41.00 per week, beginning on the date of J.W.'s removal. After approximately five months, J.W. was returned to the Williamses' home. The OFC petitioned the juvenile court for an order directing the Williamses to reimburse the OFC for J.W.'s total unpaid placement costs, in the amount of $39,655.72. After a hearing, the juvenile court granted the motion. This appeal ensued.

### Discussion and Decision

#### I. Reimbursement

##### Standard of Review

▮ Where a party has the burden of proof at trial and an adverse judgment is entered, if the party prosecutes an appeal, he or she does so from a negative judgment. *DRW Builders, Inc. v. Richardson,* 679 N.E.2d 902, 907 (Ind.Ct.App.1997). A party appealing from a negative judgment must show that the evidence points unerringly to a conclusion different from that reached by the

trier of fact. *Kennedy v. Kennedy,* 688 N.E.2d 1264, 1267 (Ind.Ct.App.1997), *trans. denied.* We will reverse a negative judgment only if the decision of the trial court is contrary to law. *Id.* In determining whether a negative judgment is contrary to law, we neither reweigh evidence nor judge witness credibility. *DRW Builders,* 679 N.E.2d at 907. Rather, we consider only the evidence most favorable to the prevailing party together with all reasonable inferences flowing therefrom. *Id.*

■ The Rules of Trial Procedure apply at hearings on reimbursement issues. IND. CODE § 31–6–7–1;[1] *L.J.F. v. Lake County Dep't of Pub. Welfare,* 484 N.E.2d 40, 41 (Ind.Ct.App.1985). Under Ind. Trial Rule 8(C), which governs affirmative defenses, a party raising "any ... matter constituting an avoidance" carries the burden of proof on that matter. The relevant statutory scheme in this case mandates that parents reimburse the county for the cost of services provided to the child, unless the court finds 1) that the parents are unable to pay, or 2) that justice would not be served by ordering payment from the parents. IND.CODE § 31–6–4–18.[2] Therefore, these statutory exceptions constitute affirmative defenses. Consequently, the party seeking to avoid the obligation must first raise the defense(s) and then present sufficient evidence to meet the burden of proof. *See Matter of Termination of Parent–Child Relationship of Infant Ellis,* 681 N.E.2d 1145, 1147 (Ind.Ct.App.1997) (invalid consent is affirmative defense placing burden of proof on claimant), *trans. denied.* Indiana Code Section 31–6–7–13(a)[3] provides that the

juvenile court's findings be based upon a preponderance of the evidence, where issues such as payment and reimbursement are concerned. *See also L.J.F.,* 484 N.E.2d at 41 (at hearings to determine reimbursement issues, burden of proof is by preponderance of evidence). Thus, in this case, after the OFC presented its evidence supporting a claim for reimbursement, the Williamses, in order to avoid this obligation, were required to show by a preponderance of the evidence that they qualified under one of the two foregoing exceptions.[4]

### IND.CODE § 31–6–4–18

The Williamses contend the juvenile court erred in ordering them to reimburse the OFC in the amount of $39,655.72, representing the out-of-home placement costs incurred on J.W.'s behalf. According to the Williamses, the juvenile court's order must be reversed because the undisputed evidence shows that they lack sufficient financial capability to pay the judgment. Further, the Williamses claim, equity and justice mandate that the OFC should bear the cost of J.W.'s placement. In support of this contention, the Williamses point out that they repeatedly requested that J.W. be placed in a facility covered by their insurance, but that the OFC nonetheless failed to obtain pre-approval from their insurance provider, and instead placed J.W. in a facility not recognized by the company.

■ A parent has a fundamental right to direct the upbringing of his or her child; however, this right is balanced against the parent's corresponding duty to protect the

---

1. Repealed by P.L. 1–1997, § 157, effective July 1, 1997. *Now see* IND.CODE § 31–32–1–3.

2. Repealed by P.L. 1–1997, § 157, effective July 1, 1997. *Now see* IND.CODE §§ 31–40–1–2 and 31–40–1–3.

3. Repealed by P.L. 1–1997, § 157, effective July 1, 1997. *Now see* IND.CODE § 31–34–12–3.

4. We are cognizant of other cases stating that sound public policy dictates that the juvenile court consider the factors laid out in IND.CODE § 31–6–4–18(e) and state its findings thereon before burdening parents with large financial obligations. *See In re the Matter of C.K.* (Ind.Ct.App. 1998), 695 N.E.2d 601, 605(reversing juvenile court's order directing parents to reimburse OFC

for child's placement expenses, where nothing in record indicated that juvenile court considered parents' ability to pay judgment or whether justice would be served by ordering reimbursement); *Carnahan v. State,* 558 N.E.2d 845 (Ind. Ct.App.1990) (holding that county was precluded from recovering costs of delinquent child's incarceration, where no evidence was presented at any hearing regarding parents' financial ability to reimburse expenses). We do not disagree with this policy. However, we believe sound public policy also demands that the burden of presenting evidence on these two exceptions properly remains with the party seeking to avoid the reimbursement obligation.

child and to do whatever may be necessary for the child's care, maintenance, and preservation. *Fager v. Hundt,* 610 N.E.2d 246, 251 (Ind.1993); *Lake County Div. of Family and Children Servs. v. Charlton,* 631 N.E.2d 526, 528 (Ind.Ct.App.1994). It is only where the parents are unable to fulfill their duty that the state has the authority, pursuant to its *parens patriae* power, to intervene. *See Charlton,* 631 N.E.2d at 528.

▮ The statute in effect at the time of the dispositional hearing provided in relevant part as follows:

(a) This section applies to a financial burden sustained by a county as the result of costs paid by the county under subsection (b), including costs resulting from the institutional placement of a child adjudicated a delinquent child or a child in need of services.

(b) The cost of any services ordered by the juvenile court for any child, or the child's parent, guardian, or custodian, and the cost of returning a child under IC 31–6–10 shall be:

(1) paid by the county; and

(2) reimbursed to the county by the child's parent or the guardian of the estate of a child as provided under this section.

The county council shall provide sufficient funds to meet the court's requirements.

(c) A parent or guardian of the estate of a child adjudicated a delinquent child or a child in need of services is financially responsible for any services ordered by the court under subsection (e). Each parent of a child alleged to be a child in need of services or alleged to be a delinquent child shall, before a dispositional hearing, furnish the court with an accurately completed and current child support obligation worksheet on the same form that is prescribed by the Indiana supreme court for child support orders.

. . . .

(e) At:

(1) a detention hearing;

(2) a hearing that is held after the payment of costs by a county under subsection (b);

(3) the dispositional hearing; or

(4) any other hearing to consider modification of a dispositional decree;

the juvenile court shall order the child's parents or the guardian of the child's estate to pay for services provided to the child or the parent or guardian unless the court finds that the parent or guardian is unable to pay or that justice would not be served by ordering payment from the parent or guardian. After receiving a petition for reimbursement from a county that has paid for services under subsection (b), the court shall hold a hearing to determine whether to order reimbursement by the child's parents or the guardian of the child's estate to the county as described under this section.

IND.CODE § 31–6–4–18. A juvenile court's order regarding payment of services must abide by the foregoing statute's provisions. *In re E.I.,* 653 N.E.2d 503, 511 (Ind.Ct.App. 1995). Those provisions mandate that the juvenile court order the child's parents to pay for services provided, unless the court finds that the parent is unable to pay or that justice would not be served by ordering payment from the parent. IND.CODE § 31–6–4–18(e); *In re Matter of C.K.* (Ind.Ct.App. 1998), 695 N.E.2d at 605.

▮ In this case, the juvenile court had before it testimony and other evidence showing that the Williamses' gross weekly income totals $447.14, and that their annual net income is approximately $20,800.00. The Williamses further testified that in light of their continuing obligation to support and care for J.W., they would suffer financial hardship if required to fully reimburse the OFC. However, the juvenile court found that the Williamses "failed to carry their burden of proof to show that they are unable to pay or that justice would not be served by ordering payment from the parents...." (R. 72). Although we might have reached a different result, we cannot say the juvenile court's order was contrary to law.

▮ As for the Williamses' argument that they demonstrated justice would not be served in ordering reimbursement because the OFC placed J.W. in a facility not recog-

nized by their insurance provider, we observe that the juvenile court is the final arbiter of the appropriate treatment for a child adjudicated CHINS. *E.I.*, 653 N.E.2d at 512. During the CHINS probable cause hearing, family case manager Patricia Omstead ("Omstead") testified that J.W. suffered from severe emotional handicaps and that his parents were unable to provide adequate care for his special needs. At the reimbursement hearing, Omstead testified that on numerous occasions she and the Williamses discussed their insurance status. According to Omstead, she was aware of the necessity of obtaining pre-approval for the Williamses' insurance and although she generally attempted to obtain such approval, she did not for J.W.'s placement at Adapts Plus. As Omstead explained, services covered by the Williamses' insurance had been used in the past, but in this case J.W.'s behavior necessitated a more restrictive environment. The juvenile court concluded that "the costs are reasonable in this case given the extended history of [J.W.]." (R. 72). The Williamses have failed to demonstrate that the juvenile court's conclusion is contrary to law. Thus, we find no error.

### II. Implied Contract

The Williamses next contend that an implied contract existed between the OFC and the Williamses which obligated the OFC to place J.W. in an out-of-home facility covered by the Williamses' insurance. According to the Williamses, the contract was created when the Williamses provided the OFC with insurance information and informed the family case manager that their insurance policy required pre-approval for J.W.'s placement. The Williamses further claim the OFC breached the implied contract by placing J.W. in a facility not covered by their insurance.

■ An implied in fact contract refers to the class of obligations which arises from mutual agreement and intent to promise, when the agreement and promise have simply not been expressed in words. *McCart v. Chief Executive Officer in Charge, Indep. Fed. Credit Union*, 652 N.E.2d 80, 85 (Ind. Ct.App.1995), *trans. denied.* A contract im-

plied in fact arises out of acts and conduct of the parties, coupled with a meeting of the minds and a clear intent of the parties in the agreement. *Id.*

■ In this case, there was no evidence of a mutual agreement between the parties; nor did the OFC manifest a clear intent to place J.W. in a facility covered by the Williamses' insurance. To the contrary, family case manager Omstead testified that she spoke with the Williamses regarding J.W.'s special needs, informed them that J.W. needed a more restrictive environment than previous placements had offered, and "discussed that those places are often not covered by insurance." (R. 193). Additionally, the State has a compelling interest in protecting the welfare of children and advancing their best interests. *See E.P. v. Marion County Office of Family & Children*, 653 N.E.2d 1026, 1032 (Ind.Ct.App.1995). In this case, the OFC determined that it was in J.W.'s best interests to be placed in the Adapts Plus program. The Williamses' contention that the OFC was contractually bound to do otherwise must therefore fail.

Affirmed.

RUCKER, J., concurs.

RILEY, J., dissents with separate opinion.

RILEY, Judge, dissenting.

I respectfully dissent. I would reverse and remand to the trial court for a hearing on the ability of the Williamses to pay the entire reimbursement amount. While the trial court had evidence of the Williamses' gross weekly income of $447.14, and their annual net income of approximately $20,800.00, there was no other evidence of their ability to pay anything except the $41.00 weekly amount toward the "total cost of placement." (R. 45). This weekly amount was established at the time J.W. was still living at home and had, in fact, not yet been placed in a secure facility. The costs of placement, at this time, were unknown.

At the emergency hearing held on September 28, 1995, the attorney for the Williamses asked the court for permission at the next hearing to set forth the costs that they had

already spent on J.W. that had already exhausted most of their personal assets.

> Haith: Your honor, at the time of the hearing [October 26, 1995] will we be able to set forth the costs that they have spent on this child has pretty much exhausted some of the insurance that's available as well as personal assets.

> Court: Sure.

> Haith: Would we be able to present this at the hearing?

> Court: Oh absolutely, that's what the statute applies for, they won't be able to get out of child support, but as far as.

> Haith: I understand that, but we could start off at a minimal support level until we can establish the costs?

> Court: Whatever the guideline, whatever the guideline support would be.

(R. 90).

The significance of the failure of OFC to obtain treatment for J.W. under the Williamses' insurance policy is that the parents had no other means to pay the treatment above the weekly amount. This problem becomes extremely critical because after his release from the secure facility J.W. was returned to the Williamses' home where they must continue his support.

I agree with the reasoning in *In re the Matter of C.K.* (Ind.Ct.App. 1998), 695 N.E.2d 601. In that case we recognize that sound policy dictates that the court state its findings with regard to the factors laid out in section 18(e) before placing such a large financial burden on the parents.

Here, there is nothing in the record, other than the financial statement, to indicate the court ever considered additional assets available to the parties to pay the entire amount of the treatment. I would reverse and remand for further hearing on the parents' ability to pay the entire reimbursement amount.