In the Matter of R.C. A Child Alleged to Be a Child in Need of Services.

Dan C. Campbell, Appellant–Defendant,

v.

Tippecanoe County Office of Family and Children, Appellee–Plaintiff.

No. 79A02–9901–JV–46.

Court of Appeals of Indiana.

May 25, 1999.

Timothy P. Broden, Broden & Miller, Lafayette, Indiana, Attorney for Appellant.

Keith R. Fafarman, Gambs, Mucker & Bauman, Lafayette, Indiana, Attorney for Appellee.

## OPINION

BROOK, J.

### Case Summary

Appellant-defendant Dan Campbell ("Campbell") appeals from the order of the trial court requiring him to reimburse the Tippecanoe County Office of Family and Children ("OFC") for the cost of services provided to his son, R.C.

### Issues

Campbell raises one issue for our review, which we restate as whether the trial court erred in including his annuity income received through the settlement of a medical malpractice claim in determining that he was capable of reimbursing the OFC for services it provided to his son.

### Facts and Procedural History

On August 13, 1997, the OFC filed a petition alleging R.C. to be a Child in Need of Services ("CHINS") and sought temporary placement for him at the Managed Behavioral Healthcare System in Kokomo, Indiana. Although Campbell and Joni C. Cutter ("Cutter"), R.C.'s mother, attempted to prevent his removal from their care, the court determined that temporary placement was necessary because his behavioral problems presented a danger to himself and others. On the same date, the OFC also filed a Motion for Reimbursement of Costs and a Petition for Parental Participation.

On September 15, 1997, a hearing was held and the parties submitted an agreed recommendation to adjudicate R.C. as a CHINS. The court granted wardship of R.C. to the OFC for placement in the Kokomo facility. At some point, R.C. was placed at the Wabash Valley Hospital ("WVH") in West Lafayette, Indiana.[1] At the review hearing held on January 13, 1998, the court found that continued placement at WVH was the least restrictive placement and in R.C.'s best interests.

The OFC expended approximately $75,850.42 in providing services to R.C. for the duration of his placement, which Campbell does not dispute. While R.C. was hospitalized, Cutter was required to assign the $433.00 per month that she received from Campbell in child support to the OFC. In addition, the court ordered Campbell and Cutter to reimburse the OFC for the remainder of the costs incurred. At a hearing on September 18, 1998, the court determined Campbell's share of the reimbursement to be $35,800.00, which was calculated as one-half of the total cost of services less credit for the child support payments previously assigned to the OFC. The court found that Campbell was able to pay $40 per week to reimburse the OFC because he had income from his employment as well as income from two annuities.

At the time of the hearing, Campbell worked 10 to 20 hours per week at Instant Copy of Lafayette for $7.00 per hour. He also had income from two annuities that paid $2,550.00 per month and $142.88 per month for a period of approximately four years. Campbell received these annuity policies as part of the settlement of a medical malpractice claim for injuries incurred when he had two total hip replacement surgeries. As a

---

1. The record does not reveal when R.C. was transferred from the facility in Kokomo to WVH. Testimony from Mary Lou Easter at the OFC indicated that R.C. was placed at WVH from approximately November 1997 to June 1998.

result of his injuries, Campbell may have to undergo more surgical procedures in the future and is limited to carrying no more than ten pounds. At the hearing, Campbell was unable to specifically identify any other work restrictions attributable to his injuries. He also noted that he had applied for disability payments, but was denied.

In addition to the annuity payments, Campbell was given a lump sum of $90,000.00 as part of the settlement of his claim. However, he has no savings and no assets remaining from these proceeds. Campbell admitted that he "just basically spent" the money on "cars and things" and bought his daughter "cars and stuff like that." Campbell's wife is employed full time, and they are able to afford $575 per month in rent.

### Discussion and Decision

Campbell contends that the trial court acted unjustly by including his annuity income in its calculations; which determined that he was financially able to reimburse the OFC for services provided to R.C. We disagree.

 In reviewing an order for reimbursement, we will only reverse the trial court's decision if it is contrary to law. *J.W. v. Hendricks County Office of Family and Children*, 697 N.E.2d 480, 482 (Ind.Ct.App. 1998). In determining whether a judgment is contrary to law, we will not reweigh evidence or judge the credibility of a witness. *Id.* Rather, we will only consider the evidence most favorable to the prevailing party together with all reasonable inferences to be drawn therefrom. *Id.* A party appealing from a negative judgment has the burden of showing that the evidence points unerringly to a conclusion different from that reached by the trier of fact. *Id.* at 481–482.

 IND.CODE § 31–40–1–2 mandates that parents reimburse the county for the cost of services provided to their child, unless the court finds (1) that the parents are unable to pay, or (2) that justice would not be served by ordering payment from the parents. Campbell argues that justice is not served by requiring him to reimburse the OFC because the annuity income he receives is compensation for personal injuries he received. However, Campbell fails to cite any authority directly supporting his assertion. Rather, he attempts to persuade us that his annuity income should not have been included in calculating his ability to reimburse the county because the Internal Revenue Code excludes the amount of damages received due to personal injuries from gross income. We do not find this analogy persuasive, nor do we find that Campbell was treated unjustly.

Campbell has failed to show that the evidence points to a conclusion different than that reached by the trial court. While Campbell is restricted from carrying more than 10 pounds, there is nothing to indicate that this has adversely affected his ability to earn a living in his current occupation. Moreover, there is no indication in the record that he is prevented from working additional hours at Instant Copy. In addition, Campbell's wife is employed full time, and they are able to pay $575 per month in rent. Campbell also chose to spend $90,000 on "cars and stuff like that" for himself and his daughter. We will not reweigh the evidence or judge the credibility of a witness. The evidence reasonably supports the inference that Campbell has the means to reimburse the OFC at a rate of $40 per week for the services provided to R.C.

### Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

RUCKER and BAKER, JJ., concur.