

FILED

Sep 23 2016, 9:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

**ATTORNEY FOR APPELLANT**

Thomas C. Allen
Fort Wayne, Indiana

**ATTORNEY FOR APPELLEE**

Timothy E. Stucky
Stucky, Lauer & Young, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re: The Adoption of:
J.S.S. and K.N.S.,

Rayburn and Beth Robinson,

*Appellants,*

v.

M.R.S.,

*Appellee.*

September 23, 2016

Court of Appeals Case No.
02A04-1603-AD-545

Appeal from the Allen Superior
Court

The Honorable Charles F. Pratt,
Judge

Trial Court Cause No.
02D08-1406-AD-86 and 87

**Bailey, Judge.**

# Case Summary

[1] B.R. and R.R. ("Foster Parents") petitioned to adopt J.S.S. and K.N.S. ("Children") without the consent of M.S. ("Father").[1] The trial court found Foster Parents had not established the clear and convincing evidence necessary to dispense with parental consent and Foster Parents filed a motion to correct error, which was substantively denied. Appealing a negative judgment, Foster Parents present a sole issue: whether the trial court's decision is contrary to law. We affirm.

# Facts and Procedural History

[2] K.N.S. was born in 2006 and J.S.S. was born in 2008. Father and Mother separated in 2008 but were not divorced until several years later. Mother moved away without informing Father of Children's location, and apparently led Children to believe that her boyfriend was their biological father.

[3] In 2009, Mother was incarcerated, but Father was not informed as to where Children were living. In 2010, Father was incarcerated. After his release from incarceration, he became aware that Mother and Children were residing in Fort Wayne, Indiana, but he did not have an address. Father moved to North Vernon, Indiana.

---

[1] K.S. ("Mother") consented to adoption by Foster Parents.

[4] In mid-November of 2012, an Allen County Department of Child Services ("DCS") caseworker informed Father that Children were in DCS custody. Father appeared for an initial Child in Need of Services ("CHINS") hearing on November 26, 2012. The CHINS court found that Father was paying child support but had not seen Children since 2009. The court entered an order regarding visitation:

> Visitation with the parents shall occur only upon the recommendation of the children's therapist, Dr. Mihlbauer, the Department of Child Services and the Guardian Ad Litem. Upon recommendation visitation shall be supervised therapeutic visitation until further order of the Court.

(App. at 24.)

[5] On January 22, 2013, the CHINS court entered an order providing in relevant part: "The Court now orders that [Father] shall have no visitation with [Children] as visitation would be contrary to the best interests of the children." (App. at 29.) On August 12, 2013, the CHINS court ordered that Father was to have supervised visitation "as recommended by the children's psychologist/therapist." (App. at 56-57.)

[6] On September 30, 2013, the CHINS court entered a permanency plan order contemplating a return of custody to Father and providing in part:

> The modification of custody is subject to the development of a relationship with his children; meeting the children's therapist; and the father securing safe, sustainable and independent housing.

(App. at 60.)

[7] On March 24, 2014, the CHINS court conducted a review hearing and entered an order stating in part:

> The court reminds the parties of this Court's Order of September 30, 2013, in which the father was ordered to meet with the children's therapist. To date that has not been done. As reported by the guardian ad litem the children do not yet know the Respondent. He has not had contact with them for over four years. Thus, the children, having experienced trauma, must be given therapeutic introduction to the children [sic] before any further modification of placement can occur.

(App. at 66.)

[8] Father contacted Dr. Mihlbauer in April of 2014. A supervised visit was scheduled for June 26, 2014. However, on June 25, 2014, a permanency hearing was conducted at which Dr. Mihlbauer provided a recommendation of no visitation. At the conclusion of the hearing, the court ordered that Father have no visitation. The permanency plan changed from reunification to termination of parental rights and DCS was authorized to petition for such.

[9] On June 25, 2014, during the pendency of the CHINS proceedings, Foster Parents petitioned to adopt Children and Mother consented to the adoption. On September 30, 2014, Father filed his objections to the adoptions. After a contested hearing, the trial court determined that Foster Parents had failed to establish by clear and convincing evidence that Father's consent was unnecessary. The petitions for adoption were dismissed. Foster Parents filed a

motion to correct error.  After a hearing, the trial court corrected scrivener's error but denied the motion to correct error in substance.  This appeal ensued.

# Discussion and Decision

## Standard of Review

[10] Indiana Code Section 31-19-9-8(a)(2) obviates the necessity of consent to adoption by a parent who, for at least one year, has failed to communicate significantly with his or her child, when able to do so.  Foster Parents were required to prove by clear and convincing evidence that Father' consent was not required.  *In re Adoption of T.W.*, 859 N.E.2d 1215, 1217 (Ind. Ct. App. 2006).  Where a party has the burden of proof and an adverse judgment is entered, if the party pursues an appeal, he or she does so from a negative judgment.  *J.W. v. Hendricks Cnty. Office of Family & Children*, 697 N.E.2d 480, 481 (Ind. Ct. App. 1998).  A party appealing from a negative judgment must show that the evidence points unerringly to a conclusion different from that reached by the trier of fact.  *Id.* at 481-82.  We will reverse a negative judgment only if the decision of the trial court is contrary to law.  *Id.* at 482.  In determining whether a negative judgment is contrary to law, we do not reweigh the evidence but will examine the evidence most favorable to the prevailing party together with reasonable inferences drawn therefrom.  *Id.*

[11] Similarly, in decisions relating to adoption, we will presume the trial court's decision is correct.  *In re Adoption of T.L.*, 4 N.E.3d 658, 662 (Ind. 2014).  In

other words, we will not disturb the court's ruling unless the evidence leads to but one conclusion and the trial judge reached the opposite conclusion. *Id.*

## Analysis

[12] Indiana Code Section 31-19-9-8(a) provides that consent to adoption is not required from:

> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
>
>> (A) fails without justifiable cause to communicate significantly with the child when able to do so; or
>>
>> (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

Because Father contested the adoptions, Foster Parents as the petitioners were required to prove by clear and convincing evidence that Father's consent was not required. *In re Adoption of D.C.*, 928 N.E.2d 602, 606 (Ind. Ct. App. 2010), *trans. denied*; *In re Adoption of M.A.S.*, 815 N.E.2d 216, 219 (Ind. Ct. App. 2004). The provisions of Indiana Code Section 31-19-9-8(a) are disjunctive; as such, either provides independent grounds for dispensing with parental consent. *In re Adoption of O.R.*, 16 N.E.3d 965, 973 (Ind. 2014). Regardless of which provision is relied upon, adoption is to be granted only if it is in the best interests of the child. *Id.* at 974. Here, Father regularly paid child support for Children. Accordingly, Foster Parents alleged that consent was not required solely on grounds of failure to communicate significantly when able to do so.

[13]    Foster Parents acknowledge that Children did not know Father and that Father could not communicate with Children while court orders prohibited the contact. However, Foster Parents insist that Father could have had visitation had he acted more promptly to contact Children's therapist. They direct our attention to *In re O.R.*, where our Indiana Supreme Court affirmed an order dispensing with a father's consent to adoption. The father, incarcerated on a domestic battery conviction, claimed that he had justifiable cause when he failed to communicate with his child because the foster parents did not honor his request to bring the child to the prison for visitation. 16 N.E.3d at 974. At the time visitation was denied, the protective order was in effect. After its expiration, the father did not pursue mail communication with O.R. through the court or through petitioners' counsel. *Id.* On appeal, the Court reviewed the evidence and concluded: "These facts do not demonstrate that Father was unable to communicate with O.R., but only that he chose not to investigate reasonable means of doing so." *Id.*

[14]    According to Foster Parents:

> In *O.R.* the Petitioners were relieved of their obligation to show that the father was able to communicate with the child because he made no attempts to even try to communicate with the child. That is exactly what happened in the case at bar. The father's one and only means of maintaining significant contact was to contact the therapist to begin introductory therapy with the children.

Appellants' Br. at 14. We do not read the *O.R.* decision so broadly. The petitioners were not relieved of a burden of proof. Rather, the Court found that they had presented sufficient evidence:

> Based on the record before us there was clear and convincing evidence before the trial court that while O.R. was "in the custody of another person [and] for a period of at least one (1) year [Father] … fail[ed] without justifiable cause to communicate significantly with [O.R.] when able to do so."

*In re O.R.*, 16 N.E.3d at 974. Here, by contrast, the trial court found that Foster Parents had not met their burden of proof. We will not disturb the ruling unless all the evidence leads to a contrary conclusion.

[15]  The evidence most favorable to the trial court's determination is that Father never gained the ability to contact Children. He did not know where Children were living until a DCS caseworker contacted him. Although Father appeared at hearings in the CHINS matter, he was not provided access to Children. He was afforded a potential route to visitation, but no onus was upon the therapist to authorize visitation even after contact. Indeed, after contact was made, the therapist did not recommend visitation.

[16]  DCS caseworker Dwila Lewis-Hess testified:

> Question: And what was the Court's orders as far as visitation?
>
> Lewis-Hess: The initial order, the Department recommended supervised visitation with [Father.]

Question: And through what department was that supervised visitation?

Lewis-Hess: I can't remember, to be honest with you. I don't think – a referral was actually never made for visitation.

(Tr. at 34.)

[17] Based upon their assumption that Father delayed for one and one-half years,[2] Foster Parents argue that Father should be held accountable for a lack of diligence. However, our review is not one of whether a parent acted promptly or reasonably. Foster Parents were required to show, by clear and convincing evidence, Father failed to communicate "when able to do so." I.C. § 31-19-9-8. Our review is limited to whether there was any evidence of record to support the trial court's determination that Foster Parents failed to establish that Father had such ability. *J.W.*, 697 N.E.2d at 481. CHINS orders and caseworker testimony support the trial court's order.

---

[2] This assumption highlights caseworker testimony most favorable to Foster Parents, asserting that Father delayed from November 2012 to April 2014. However, the time lapse between the September 30, 2013 order and the April 2014 contact is less than seven months.

# Conclusion

The trial court did not clearly err in determining that Foster Parents failed to meet their burden of proof to obviate the necessity of Father's consent to the proposed adoptions.

Affirmed.

Riley, J., and Barnes, J., concur.