# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 12 2018, 6:02 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

George R. Livarchik
Livarchik & Farahmand
Chesterton, Indiana

ATTORNEY FOR APPELLEE

Rachel E. Doty
Braje, Nelson, and Janes LLP
Michigan City, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

In re: The Adoption of N.T., a minor child,

M.T.,

*Appellant-Petitioner,*

v.

J.T.,

*Appellee-Respondent.*

April 12, 2018

Court of Appeals Case No.
46A03-1709-AD-2133

Appeal from the LaPorte Superior Court

The Honorable Richard R. Stalbrink, Jr., Judge

Trial Court Cause No.
46D02-1506-JP-134

**Robb, Judge.**

# Case Summary and Issue

[1] J.T. ("Natural Father") and K.T. ("Mother") are the parents of N.T. ("Child"), born October 29, 2005. With Mother's consent, M.T. ("Stepfather") filed a petition to adopt Child on January 25, 2016, alleging Natural Father's consent to the adoption was unnecessary. Stepfather now appeals the trial court's order finding that Natural Father's consent *is* necessary, raising two issues for our review, which we consolidate and restate as one: whether the trial court's conclusion that Natural Father's consent to Stepfather's petition for adoption was necessary is clearly erroneous. Concluding the trial court did not clearly err in determining Natural Father's consent to the adoption was required, we affirm.

# Facts and Procedural History

[2] Mother and Natural Father have never been married, nor have they ever resided together as a couple after Child was born. Natural Father was present at Child's birth and executed a paternity affidavit at that time. No child support order has ever been in effect, and Natural Father has not voluntarily provided monetary support for Child. He was imprisoned for approximately two and one-half years between 2005 and 2008. While Natural Father was incarcerated, his mother ("Paternal Grandmother") spent time with Child with Mother's

permission.[1] After Natural Father was released from prison, he visited with Child when she was with Paternal Grandmother and occasionally, would be alone with her when Paternal Grandmother had to work. When Natural Father moved into his own apartment with his girlfriend and their child, Child sometimes visited with Natural Father there. Nonetheless, Natural Father has never had his own court-ordered parenting time with Child.

[3]     Natural Father suffers from schizoaffective disorder, bipolar disorder, and chronic depression. He was hospitalized for several days in March 2015 to deal with these issues. While hospitalized, he was involved in several incidents where he became combative with hospital staff. Following his release, Natural Father began outpatient treatment, which he was still participating in at the time of trial. In April 2015, Mother severed contact between Natural Father and Child. In June 2015, Natural Father filed a petition to establish his paternity of Child. In November 2015, Mother and Natural Father entered a stipulation establishing Natural Father's paternity. A hearing was held in February 2016 regarding related matters, including child support and parenting time. The trial court ordered professionally supervised visitation between Natural Father and Child due to Natural Father's mental health and anger issues. Because Natural Father receives Social Security disability and is not

---

[1] It is unclear whether Paternal Grandmother had court-ordered grandparent visitation, but it does appear that she exercised regular visitation with Child, including alternating weekends, holidays, and extended time in the summer.

employed, the trial court did not order him to pay any child support, although it did order him to explore whether Child was eligible for any disability benefits.

[4] Mother and Stepfather have lived together since mid-2007, and were married on August 15, 2015. In January 2016, Stepfather filed his petition to adopt Child, attaching Mother's written consent to the adoption and alleging Natural Father's consent was unnecessary for the following reasons:

> (a) Since October 29, 2005 (the date of the birth of [Child]) said [Natural] Father has not paid any child support; prior to the date of filing this Petition for Adoption, for a period of at least one (1) year, said [Natural] Father has knowingly failed to provide for the care and support of [Child] (See I.C. § 31-19-9-8(a)(2)(B); and

> (b) Since March 2006, [Natural] Father has never communicated with [Child] and prior to the date of filing this Petition, for a period of at least one (1) year, said [Natural] Father has failed without justifiable cause, to communicate significantly with the child when able to do so. (See I.C. § 31-19-9-8(a)(2)(A).

Appellant's Appendix, Volume II at 61. Natural Father filed a motion to contest the adoption, and the adoption proceeding was consolidated with the existing paternity proceeding.

[5] In November 2016, Natural Father attempted suicide by shooting a crossbow into his chest and was hospitalized. In January 2017, after Mother and Stepfather became aware of the incident, Stepfather filed an amended petition to adopt, adding the following allegation:

That [Stepfather] believes [Natural Father] is unfit to parent the child, has a recent history of being harmful to himself and others, and per I.C. § 31-19-9-8, said consent from the biological father is not required, which provides in pertinent part:

(11) [Consent to adoption is not required from] [a] parent if:

> (A) a petition for adoption proves by clear and convincing evidence that the parent is unfit to be a parent; . . .

> (B) the best interests of the child sought to be adopted would be served if the court dispensed with the parent's consent.

*Id.* at 99.

The trial court held a hearing on Stepfather's Petition for Adoption and Natural Father's Motion to Contest Adoption over several days beginning on March 23, 2017. On August 18, 2017, the trial court issued its findings of fact and conclusions thereon, granting Natural Father's Motion to Contest Adoption and denying Stepfather's Petition for Adoption. In relevant part, the trial court's order states:

**II. Findings of Fact**
* * *
B. Fitness of Natural Father
13. Natural Father has a history of mental illness, including multiple in-patient hospitalizations.
14. Natural Father was hospitalized for an attempted suicide on November 24, 2016. Natural Father was admitted to [an inpatient psychiatric] facility in South [B]end thereafter.
15. Natural Father is still pursuing treatment voluntarily.

16. Natural Father's therapist testified as to his cooperation and compliance with treatment.

* * *

D. Failure to Provide Support for One Year

24. Mother testified that Natural Father has never provided monetary child support for [Child].

25. Natural Father began receiving Supplemental Security Income in May of 2015.

26. Mother testified to her lack of judicial intervention for child support because of her belief of Natural Father's inability to pay.

27. [The mother of Natural Father's other child] testified that her [sic] and Natural Father struggled to pay their financial obligations during their time together.

28. [Paternal] Grandmother testified that Natural Father has an inconsistent work history, does not work well with others, and was often unemployed.

29. Natural Father testified that he obtained seasonal employment for "like two" years.

30. [Paternal] Grandmother testified that there was never an instance she could recall when [Natural] Father was financially able to support [Child] that [Natural] Father refused to make any financial contribution to Mother for [Child].

31. When Natural Father was unable to provide financial support for [Child], he would ask [Paternal] Grandmother to support [Child] on his behalf.

32. [Paternal] Grandmother testified that on behalf of [Natural] Father, she personally purchased food, diapers, medicines, a car seat, formula, clothing, and school supplies for [Child].


III. Conclusions of Law

33. The most protected status in any adoption proceeding is that of the natural parent. *M.W. v. A.W.*, 933 N.E.2d 909, 913 (Ind. Ct. App. 2010).

* * *

B. Fitness of Natural Father

36. [Stepfather] must prove by clear and convincing evidence

that Natural Father is unfit to be [a] parent and that [Child's] best interests would be served if this Court dispensed with Natural Father's consent.

* * *

38.  This Court is not convinced that Natural Father is unfit as a parent, either due to his mental illness or by any other means. The testimony from Natural Father and his current therapist, coupled with the fact that he is voluntarily seeking treatment, leads this Court to believe that Natural Father is making a sincere effort.

39.  Further, the only indication of any stress on [Child] is the altercation that happened between Natural Father and [Paternal] Grandfather that [Child] witnessed.

40.  Therefore, this Court finds that [Stepfather] has not proven by clear and convincing evidence that Natural Father is unfit as a parent or that [Child's] best interests would be served if Natural Father's rights were dispensed.

* * *

D. Failure to Provide Support for One Year

44.  [Stepfather] must prove by clear and convincing evidence that for a period of at least one year Natural Father failed to provide for the care and support of [Child] when able to do so as required by law or judicial decree.

45.  A parent's failure to support may have occurred during "any year in which the parent had an obligation and the ability to provide support, but failed to do so."

46.  It is well settled that parents have a duty to support their children regardless of a court mandate to pay.

47.  A parent's child support obligation can be satisfied through nonmonetary measures such as clothing or gifts.

* * *

49.  Indiana Courts are clear that Supplemental Security Income is not considered income for purposes of child support.

50.  Thus, Natural Father's nonpayment of child support cannot be considered from May 2015 to the present because he receives SSI.

51. Natural Father's testimony that for the period that Natural

Father worked full time 70% of the time for "like two" years prior to May 2015 is not enough to show that he had the ability to provide support.

52. Keeping with the [*In re Adoption of N.W.*, 933 N.E.2d 909 (Ind. Ct. App. 2010), *adopted by* 941 N.E.2d 1042 (Ind. 2011)] holding, this Court cannot draw an inference of an ability to pay merely from Natural Father's income given the testimony of Natural Father's hardships by [Paternal] Grandmother and [his ex-girlfriend].

53. Furthermore, it appears Natural Father fulfilled his common law support obligation through nonmonetary means either to the best of his ability given the circumstances or through [Paternal] Grandmother.

54. Consequently, Natural Father's consent to this adoption is necessary under I.C. §§ 31-19-9-1 [and] 31-19-9-8(a).


Therefore, it is ordered and adjudged that [Natural Father's] Motion to Contest Adoption be, and is hereby, granted; and that [Stepfather's] Amended Petition for Adoption be, and is hereby, denied.

*Id.* at 12-18. Stepfather now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

## I. Standard of Review

When we review a trial court's ruling in an adoption proceeding, the ruling will not be disturbed unless the evidence leads to only one conclusion and the trial court reached the opposite conclusion. *In re Adoption of M.L.*, 973 N.E.2d 1216, 1222 (Ind. Ct. App. 2012). We do not reweigh evidence, and we consider the

evidence most favorable to the decision together with reasonable inferences drawn from that evidence. *Id.* Further, we "recognize that the trial judge is in the best position to judge the facts, determine witness credibility, get a feel for the family dynamics, and get a sense of the parents and their relationship with their children." *Id.*

[8] Here, it appears the trial court sua sponte issued findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). When that occurs, we apply a two-tiered standard of review: first, we determine whether the evidence supports the findings of fact and second, whether the findings support the judgment. *In re Adoption of A.S.*, 912 N.E.2d 840, 851 (Ind. Ct. App. 2009), *trans. denied*. The trial court's findings or judgment will be set aside only if they are clearly erroneous. *Id.* A finding of fact is clearly erroneous if the record lacks evidence or reasonable inferences from the evidence to support it. *Id.*

## II. Parental Consent

[9] Stepfather appeals the trial court's order denying his petition to adopt Child without Natural Father's consent. "The most protected status in any adoption proceeding is that of the natural parent." *In re Adoption of N.W.*, 933 N.E.2d 909, 913 (Ind. Ct. App. 2010)*, adopted by* 941 N.E.2d 1042 (Ind. 2011). Generally, a petition to adopt a minor child may be granted only if written consent to adopt has been provided by the biological parents. *See* Ind. Code § 31-19-9-1. However, when appropriate, there are exceptions to the consent requirement. *See* Ind. Code § 31-19-9-8. Specific to this case, Stepfather asserts

that Natural Father's consent to his adoption of Child is unnecessary based on two separate exceptions provided by law: (1) Father has failed to provide for the care and support of Child for at least one year; and (2) Father is unfit to be a parent and the best interests of Child would be served if his consent was not required. *See* Ind. Code § 31-19-9-8(a)(2)(B), and (11).[2] The provisions of Indiana Code section 31-19-9-8(a) are disjunctive; that is, each provision provides independent grounds for dispensing with parental consent. *In re Adoption of J.S.S.*, 61 N.E.3d 394, 397 (Ind. Ct. App. 2016). Recognizing the fundamental importance of the parent-child relationship, we strictly construe the adoption statutes to protect and preserve that relationship. *N.W.*, 933 N.E.2d at 913.

[10] Regardless of which ground is relied on to dispense with parental consent, a petition for adoption can only be granted if it is in the best interests of the child. *In re Adoption of O.R.*, 16 N.E.3d 965, 973 (Ind. 2014). A petitioner for adoption has the burden of proving, by clear and convincing evidence, one of the statutory criteria allowing for adoption without consent. *J.S.S.*, 61 N.E.3d at 397.

---

[2] Although Stepfather's petition to adopt also alleged Natural Father failed to significantly communicate with Child for a period of at least one year when able to do so, Ind. Code § 31-19-9-8(a)(2)(A), the trial court found Stepfather had failed to provide clear and convincing evidence such was the case, Appealed Order at 6, and Stepfather does not pursue that exception on appeal.

## A. Failure to Support

[11] Stepfather contends the trial court erred in concluding Natural Father's consent to adoption was required where he failed to support Child for over one year. Indiana Code section 31-19-9-8(a)(2)(B) specifies that consent is not required from a parent who, for a period of at least one year, "fails to provide for the care and support of the child *when able to do so* as required by law or judicial decree." (Emphasis added.) The relevant time period for determining whether a non-custodial parent has supported his child "is not limited to either the year preceding the hearing or the year preceding the petition for adoption, but is any year in which the parent had an obligation and the ability to provide support, but failed to do so." *In re Adoption of J.T.A.*, 988 N.E.2d 1250, 1255 (Ind. Ct. App. 2013), *trans. denied*.

[12] Prior to the filing of the petition for adoption, no support order was in place requiring Natural Father to pay a fixed amount of child support. A parent nonetheless has a common law obligation to support his child even in the absence of a court order. *In re Adoption of M.B.*, 944 N.E.2d 73, 77 (Ind. Ct. App. 2011). This court has recognized that a parent's nonmonetary contribution to a child's care may be counted as support. *N.W.*, 933 N.E.2d at 914. Here, the trial court found that Natural Father's in-kind contributions constituted support of Child. Stepfather has not shown that the trial court erred in reaching that conclusion.

[13]　In *N.W.*, we concluded a stepmother had failed to carry her burden of showing that the natural mother was able to provide for her child but refused to do so. 933 N.E.2d at 913-14. When mother and father divorced, they agreed father would have physical custody of the child and mother would have no support obligation due to her economic condition. Eventually, the parties sought modification of custody (by mother) and support (by father). In the modification proceeding, the trial court determined that mother had a negative child support obligation. While the modification requests were pending, the stepmother filed a petition to adopt the child, alleging that mother had failed to support the child and presenting evidence of mother's regular income. The trial court granted the adoption petition over mother's objection. We reversed, holding that the "mere showing" that mother had a regular income did not indicate that she had the ability to pay support. *Id.* at 913. Rather, although mother "might not have been able to monetarily provide [child] with much," she "provided to the best of her ability: while creating a nurturing environment during parenting time, [m]other supplied [child] with all the necessities of housing, food, and even . . . outings and gifts." *Id.* at 914.

[14]　Although the procedural posture of *N.W.* is opposite to this case, as we were addressing the trial court's grant of a petition for adoption rather than the denial of a petition to adopt, the facts of *N.W.* are very similar, and the same result should obtain here. Natural Father acknowledged that he had never paid regular child support. Mother stated that she had never pursued a court order for child support because "[h]e never had a job that paid anything, so I figured

it would do me no good . . . ." Transcript, Volume III at 153. Prior to 2015, Natural Father's employment was sporadic, and even if he had a regular income during his periods of employment, a regular income standing alone is insufficient to indicate the ability to pay support. *N.W.*, 933 N.E.2d at 914. During the time he resided with his now-ex-girlfriend and their child, they struggled to pay their bills even when Natural Father was working. It is true that Natural Father regularly bought cigarettes and occasionally marijuana. We do not condone the use of resources—limited or otherwise—on such items, but those expenditures alone do not demonstrate Natural Father's ability to support Child with regular and significant monetary payments. *See Matter of Adoption of D.H. III*, 439 N.E.2d 1376, 1377 (Ind. Ct. App. 1982) (noting natural father's purchases of cigarettes and gas did not alone indicate an ability to pay support). Nonetheless, when Natural Father was able, he provided clothes, shoes, school supplies, gifts, and food for Child, and when he was unable to provide those things, he asked Paternal Grandmother to provide them on his behalf and she did. Natural Father testified, "If [Mother] asked if [Child] needed something, then it was always provided." Tr., Vol. II at 125.

[15] Under these circumstances, the trial court's refusal to dispense with Natural Father's consent to adopt for failure to support Child is not clearly erroneous.

## B. Unfitness

[16] Stepfather also contends Natural Father's consent to adoption is not required because Natural Father is unfit to parent and dispensing with his consent would

be in Child's best interests. *See* Ind. Code § 31-19-9-8(a)(11). Although the statute does not provide a definition of "unfit," we have observed that it is defined as "[u]nsuitable; not adapted or qualified for a particular use or service" or "[m]orally unqualified; incompetent." *M.L.*, 973 N.E.2d at 1223 (quoting Black's Law Dictionary 1564 (8th ed. 2004)). We have also observed that termination cases can provide useful guidance as to what makes a parent "unfit" because termination cases also strike a balance between parental rights and the best interests of the child. *Id.* In termination cases, we consider factors such as a parent's substance abuse, mental health, willingness to follow recommended treatment, lack of insight, instability in housing and employment, and ability to care for a special needs child to determine whether a parent was unfit. *Id.* A parent's criminal history may also be relevant to whether a parent is unfit. *In re Adoption of D.M.*, 82 N.E.3d 354, 359 (Ind. Ct. App. 2017).

[17] Stepfather alleges Natural Father's substance abuse, significant mental health problems, violent and angry outbursts, and failure to disclose his struggles make him unfit to parent Child. Clearly, however, the trial court thought otherwise. Natural Father does use marijuana, but there is no evidence he has ever done so in the presence of Child. The trial court acknowledged Natural Father's history of mental illness, but nonetheless concluded his mental illness did not make him unfit, especially in face of testimony that he was voluntarily seeking treatment and making a "sincere effort" to address his issues. Appealed Order at 6. The trial court also noted that there was no evidence that Natural Father's

struggles negatively impacted Child. With respect to the other termination factors, we note that Natural Father was imprisoned for the first two years of Child's life, but there was no evidence of criminal activity since. Based on the record before us, the findings of the trial court, and our deferential standard of review, we conclude the trial court did not clearly err in determining that Stepfather failed to prove by clear and convincing evidence that Natural Father was unfit to parent Child.

# Conclusion

[18] We applaud Stepfather for his involvement in Child's life these past ten years and his willingness to take on the legal, emotional, and moral obligations of being her adoptive parent. However, our overriding concern in these matters is for Child and whether the relationship with her natural parent should be irrevocably severed. Child was eleven years old at the time of the hearing on the petition to adopt. Other than the first couple of years of Child's life when Natural Father was incarcerated, he has been a regular presence in her life. The trial court, which is more familiar with this case and these parties, determined this parent-child relationship should continue. We cannot say the trial court

clearly erred in that determination. Accordingly, the judgment of the trial court denying Stepfather's petition to adopt is affirmed.[3]

[19] Affirmed.

Crone, J., and Bradford, J., concur.

---

[3] Natural Father has requested an award of attorney fees pursuant to Appellate Rule 66(E) as damages for Stepfather's conduct on appeal. We acknowledge certain deficiencies in Stepfather's brief—for instance, his "Summary of Argument" is fifteen pages long, and is repeated virtually verbatim in the argument section— but we do not believe an award of attorney fees is warranted in this case. Although we have affirmed the trial court's order, we cannot say that Stepfather's contentions on appeal are completely devoid of merit or that his appeal is permeated with bad faith or brought for purposes of harassment. *See Matter of Guardianship of Lamey*, 87 N.E.3d 512, 527 (Ind. Ct. App. 2017).