## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 09 2018, 8:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Justin R. Wall
Wall Legal Services
Huntington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re Termination of the Parent-Child Relationship of:

A.R. and E.R. *(Minor Children)*
and
W.G. *(Mother)*,

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

July 9, 2018

Court of Appeals Case No.
18A-JT-508

Appeal from the Wabash Circuit Court

The Honorable Robert R. McCallen III, Judge

Trial Court Cause Nos.
85C01-1705-JT-9
85C01-1705-JT-10

**Robb, Judge.**

# Case Summary and Issue

[1] W.G. ("Mother") consented to the adoption of her two minor children in a proceeding for involuntary termination of her parental rights. Over three months after the juvenile court ordered her rights to be terminated, Mother filed a motion to withdraw her consent. She now appeals the juvenile court's denial of her motion, raising one issue for our review: whether the juvenile court abused its discretion in denying her motion to withdraw her consent. Concluding the juvenile court did not abuse its discretion in declining to grant her relief from her consent to adoption, we affirm.

# Facts and Procedural History

[2] Mother and the father of her two minor children were living together in 2016 when they became involved in an altercation that ultimately drew the attention of the Indiana Department of Child Services ("DCS"). The children were removed from the home and adjudicated children in need of services.

[3] Approximately one year later, DCS filed a petition for involuntary termination of Mother's parental rights.[1] After several continuances, a fact-finding hearing was set for October 25, 2017. On October 24, 2017, Mother filed a motion to continue the hearing which the juvenile court denied. On October 25, 2017,

---

[1] DCS also filed a petition seeking to terminate the father's parental rights. He executed a voluntary relinquishment of parental rights form as to each child and his parental rights were terminated. He does not participate in this appeal.

Mother signed a Consent to Adoption with respect to each child, together with a Post Adoption Agreement with the prospective adoptive parents in which she acknowledged that she "understands that this consent is irrevocable and that [she] consents of [her] own free will and not as a result of duress, inducement or intimidation." Appellants' Appendix, Volume 2 at 69. The post-adoption agreement allowed contact between Mother and the children.

[4] The juvenile court held a hearing on October 27, 2017, at which only DCS, by its attorney and family case manager, and the court appointed special advocate appeared. The juvenile court noted,

> [Mother] has previously consented to adoption, which I also interpret as a consent to termination of parental rights. Dad has already signed a voluntary relinquishment and agreement to terminate parental rights as well. For that reason, I did not have the hearing [on October 25, 2017], but I do believe it was necessary to hear evidence.

Transcript at 11. The family case manager confirmed that Mother had filed consents to adoption. She then testified that both children had been removed from the home and under DCS supervision for at least fifteen of the previous twenty-two months; that in her opinion, there is a reasonable probability that the conditions that led to their removal would not be remedied; that in her opinion, there was a reasonable probability that the continuation of the relationship posed a threat to the children; that termination was in their best interests; and that DCS had a satisfactory plan—adoption—for the care of the children. When asked *why* termination was in the children's best interests, the

family case manager stated, "the children have been removed from the parents' home for an extended length of time. The issue, the underlying issues have not resolved by either parent." *Id.* at 13. With that testimony, the juvenile court stated, "I think that's sufficient," and further stated that it would be taking judicial notice of all orders, pleadings, progress reports, and evidence "as they support the termination of parental rights in this cause of action." *Id.* at 14.

[5] The juvenile court signed termination orders dated the same day that stated:

> That [M]other has informed the Court that she now wishes to voluntarily terminate her parental rights to the minor [children].
>
> That there has been filed with the Court forms entitled, "Voluntary Relinquishment of Parental Rights" signed by [M]other. That all parties have received copies of said form and that the consent shall be made part of the Court's record in this case, as the consent has been filed with the Court on October 25, 2017.
>
> That the Court has reviewed with the [M]other her rights in this proceeding as set forth in I.C. 31-35-1-12 and the Court finds that [M]other has understood the advisements to the parent given by the Court and that [M]other has understood the rights and advisements given to the parent in the written consent.
>
> That the Court finds that [M]other is acting freely, voluntarily, without duress, coercion, or undue influence upon her, and that she understands the importance of her admission in open Court pursuant to I.C. 31-35-1-12 and as expressed in the written consent.

That the [M]other has acted with the advice of counsel and has been represented by counsel throughout these proceedings and this hearing.

That the requirements of I.C. 31-35-1-6 have been met by the appearance of the parent in open Court at this hearing.

* * *

Court finds [M]other knowingly and voluntarily consented to termination of the parent-child relationship.

Appellants' App., Vol. 2 at 75-76.

[6] On February 19, 2018, Mother filed a Motion to Withdraw Consent, alleging that at the time she signed the Consents to Adoption, "she was a patient at Michiana Behavioral Health and Rehabilitation Center [and] was not in a sufficient state of mind and mental health to be able to competently sign a termination of her parental rights." *Id.*, Vol. 2 at 78. The juvenile court held a hearing, at the conclusion of which the court orally denied the motion to withdraw consent and advised Mother of her right to appeal.

# Discussion and Decision

## I. Standard of Review

[7] Although a parent's voluntary relinquishment of parental rights and consent to adoption are obviously intertwined, each is governed by a distinct statute and treated as a separate issue. *See Matter of Adoption of Konar*, 454 N.E.2d 886, 888

(Ind. Ct. App. 1983) (holding mother's rescission of her voluntary termination of parental rights did not serve to rescind a separately signed consent to adoption); *compare* Ind. Code ch. 31-19-9 (consent to adoption) *with* Ind. Code ch. 31-35-1 (voluntary termination of parental rights). Here, Mother filed Consents to Adoption.[2] As the party bearing the burden of proof in a proceeding to withdraw such consent, Mother had to prove her case by clear and convincing evidence. Ind. Code § 31-19-10-0.5. Where a judgment is entered against the party who has the burden of proof, he or she appeals from a negative judgment and must show that the evidence points unerringly to a conclusion different from that reached by the trier of fact. *J.W. v. Hendricks Cty. Ofc. Of Family & Children*, 697 N.E.2d 480, 481-82 (Ind. Ct. App. 1998). We neither reweigh the evidence nor judge the credibility of the witnesses and consider only the evidence favorable to the judgment in determining whether the judgment is contrary to law. *Id.* at 482.

---

[2] Therefore, any of Mother's arguments related to the requirements of Indiana Code chapter 31-35-1 are irrelevant to the resolution of this appeal. We do note, however, that the trial court's order, in stating things such as, "there has been filed with the Court forms entitled, 'Voluntary Relinquishment of Parental Rights' signed by mother," "the Court has reviewed with the mother her rights in this proceeding as set forth in I.C. 31-35-1-12," and "the requirements of I.C. 31-35-1-6 have been met by the appearance of the parent in open Court at this hearing," Appellants' App., Vol. 2 at 75-76, is both erroneous and unnecessarily confusing. The document before the court was clearly a "Consent to Adoption," Mother did not appear in court on October 27, 2017, when the consent was accepted, and accordingly, the trial court did not review anything with Mother.

# II. Withdrawal of Consent

The State alleges that Mother's motion to withdraw her consent to the children's adoption was untimely. Indiana Code section 31-19-10-3 provides:

> (a) A consent to adoption *may* be withdrawn not later than thirty (30) days after consent to adoption is signed if:
>
> > (1) the court finds, after notice and opportunity to be heard afforded to the petitioner for adoption, that the person seeking the withdrawal is acting in the best interest of the person sought to be adopted; and
>
> > (2) the court orders the withdrawal.
>
> (b) A consent to adoption *may not* be withdrawn after:
>
> > (1) thirty (30) days after the consent to adoption is signed;
>
> > (2) the person who signs the consent to adoption appears, in person or by telephonic communications or video conferencing, before a court in which the petition for adoption has been or will be filed and acknowledges that the person:
>
> > > (A) understood the consequences of the signing of the consent to adoption;
> > > (B) freely and voluntarily signed the consent to adoption; and
> > > (C) believes that adoption is in the best interests of the person to be adopted; *or*
>
> > (3) the person who signs the consent to adoption appears, in person or by telephonic communications or video

conferencing, before a court of competent jurisdiction if the parent is outside of Indiana and acknowledges that the person:

> (A) understood the consequences of the signing of the consent to adoption;
> (B) freely and voluntarily signed the consent to adoption; and
> (C) believes that adoption is in the best interests of the person to be adopted;

*whichever occurs first*.

(Emphases added.)

[9] Mother contends "she should be allowed to withdraw her Consents to Adoption even though her request to do so occurred several months after she gave the consents." Brief of Appellant at 24. She argues the statute precludes her consents from being withdrawn only after thirty days *and* after she appears before the trial court and makes certain acknowledgements. *See id.* Because Mother did not appear in court and acknowledge that she understood the consequences of signing the consents, freely and voluntarily signed the consents, and believes adoption is in the best interests of her children, she argues her consents may be withdrawn. However, Mother misinterprets the statute. The statute is written in the disjunctive and therefore, consent may not be withdrawn after thirty days *or* after the parent appears in court, "whichever occurs first." Ind. Code § 31-19-10-3(b). Accordingly, Mother's motion to withdraw her consent was untimely.

Although Mother did not timely move to withdraw her consent, Mother also relies on Indiana Trial Rule 60(B) as an avenue for relief. Trial Rule 60(B) provides:

> On motion and upon such terms as are just the court may relieve a party . . . from a judgment . . . for the following reasons:
>
> * * *
>
> (5) except in the case of a divorce decree, the record fails to show that such party was represented by a guardian or other representative, and if the motion asserts and such party proves that
>
>     (a) at the time of the action he was an infant or incompetent person, and
>     (b) he was not in fact represented by a guardian or other representative, and
>     (c) the person against whom the judgment, order or proceeding is being avoided procured the judgment with notice of such infancy or incompetency, and, as against a successor of such person, that such successor acquired his rights therein with notice that the judgment was procured against an infant or incompetent, and
>     (d) no appeal or other remedies allowed under the subdivision have been taken or made by or on behalf of the infant or incompetent person, and
>     (e) the motion was made within ninety (90) days after the disability was removed or a guardian was appointed over his estate, and
>     (f) the motion alleges a valid defense or claim;
>
> * * *

(8) any reason justifying relief from the operation of the judgment, other than those reasons set forth in sub-paragraphs (1), (2), (3), and (4).

A motion filed for either of these reasons must be filed "within a reasonable time." Ind. Trial Rule 60(B). Trial Rule 60(B) "affords relief in extraordinary circumstances which are not the result of any fault or negligence on the part of the movant." *Goldsmith v. Jones*, 761 N.E.2d 471, 474 (Ind. Ct. App. 2002). The burden is on the movant to establish the ground for relief under this rule. *In re Paternity of P.S.S.*, 934 N.E.2d 737, 740 (Ind. 2010).

[11] We note first that a Trial Rule 60(B) motion is not a substitute for a direct appeal. *In re Paternity of P.S.S.*, 934 N.E.2d 737, 740 (Ind. 2010). Therefore, to the extent Mother challenges the termination order itself, her attempt is untimely.[3] As for Mother's motion, she did not style her motion to withdraw consent as a motion for relief from judgment pursuant to Trial Rule 60(B), but the juvenile court noted at the hearing that it was treating it as such. *See* Tr., Vol. 2 at 17 (Mother's counsel agreeing the juvenile court should treat the motion as a Trial Rule 60(B) motion). "Mother believes that under reason (5), she lacked capacity and was incompetent at the time she signed the Consents, and as such, the Order issued by the trial court should not stand." Br. of Appellant at 26. "Mother also believes that under reason (8), the trial court is

---

[3] We do note, however, that the termination order is primarily, if not exclusively, based on Mother's consent. Had we found an issue with the consent, it may have been necessary to revisit the termination because the evidence that termination was otherwise appropriate was slim to non-existent.

justified in relieving her from the Order and her Consents should be invalidated due to her lack of capacity and incompetence." *Id.*

[12] Even assuming Mother was "incompetent" as contemplated by Trial Rule 60(B)(5),[4] Mother has clearly failed to show that she is entitled to relief under that subsection. Mother was represented by counsel throughout these proceedings. One of the requirements for relief under subsection (5) is that the movant show that she "was not in fact represented by a guardian or other representative." T.R. 60(B)(5)(b). In addition, the movant must show that the other party had notice of the incompetence. Mother has failed to show either of these are true here.

[13] As for subsection (8), "[t]he trial court's residual powers under subsection (8) may only be invoked upon a showing of exceptional circumstances justifying extraordinary relief." *Brimhall v. Brewster*, 864 N.E.2d 1148, 1153 (Ind. Ct. App. 2007), *trans. denied*. As a general rule, a petition to adopt a child may be granted only if written consent has been executed by each living parent of a child born in wedlock.[5] Ind. Code § 31-19-9-1(a)(1). The consent may be

---

[4] The trial court questioned Mother at the hearing on her motion to withdraw consent about whether she had ever received a diagnosis of incompetence in the sense of being "unable to appreciate and understand the proceedings." Tr., Vol. 2 at 29. Mother said she did not know, but conceded she had never presented any diagnosis to the court. *Id.*

[5] Although it is not completely clear from the record whether or not Mother and the father were married, it appears that they were. Regardless, the father's voluntary relinquishment of his parental rights means only Mother's consent was required.

executed at any time after the birth of the child. Ind. Code § 31-19-9-2(a).[6] To be deemed valid, a parent's consent to adoption must be voluntary. *In re Adoption of M.L.L.*, 810 N.E.2d 1088, 1093 (Ind. Ct. App. 2004). "[C]onsent to an adoption is voluntary if it is an act of the parent's own volition, free from duress, fraud, or any other consent-vitiating factors, and if it is made with knowledge of the essential facts." *Id.* The issue of invalid consent is properly raised by a petition to withdraw consent. *Id.* We have held that "emotion, tensions, and pressure are . . . insufficient to void a consent unless they rise to the level of overcoming one's volition." *Bell v. A.R.H.*, 654 N.E.2d 29, 32-33 (Ind. Ct. App. 1995).

[14] Mother testified at the hearing on her motion to withdraw that she was in active withdrawal from heroin and methamphetamine and non-compliant with her prescription medication when she admitted herself into a four-day substance abuse detox treatment on October 24, 2017. She testified that she was unable to focus on the consents she signed the following day, although she knew that by signing them the adoption would be open and she would have "the chance that the kids would still be in my life and I'd still get to see them every now and then." Tr., Vol. 2 at 21. Given this testimony, Mother gave consent of her own volition, with knowledge of the essential facts, and any duress she was under

---

[6] Mother's consent was filed in the presence of a notary public. *See* Appellants' App., Vol. 2 at 67-68; Ind. Code § 31-19-9-2(a)(2).

was of her own making.  To find otherwise would require reweighing the evidence, which we cannot do.  *See J.W.*, 697 N.E.2d at 482.

# Conclusion

We cannot say that the only conclusion to be deduced from the evidence is that Mother's consent was obtained though improper means.  The juvenile court did not abuse its discretion when it found that Mother's consent was voluntary and declined to grant her relief.  The judgment of the juvenile court is therefore affirmed.

Affirmed.

Najam, J., and Altice, J., concur.